## ST. LOUIS & S. F. R. CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 17, 1909.)

No. 2,818.

1. COURTS (§ 274*)—TRANSPORTATION OF LIVE STOCK—TWENTY-EIGHT HOUR LAW—ACTION TO RECOVER PENALTY—VIOLATION OUT OF THE LIMITS OF A STATE—JURISDICTION.

Neither section 2 of article 3 of the Constitution nor the sixth amendment thereto operates to require that an action to recover a penalty incurred out of the limits of a state, under the 28-hour law (Act June 29, 1906, c. 3594, 34 Stat. 607 [U. S. Comp. St. Supp. 1907, p. 918]), be brought or tried in the district wherein the violation occurs; and such an action lawfully may be brought and tried in the district wherein the defendant resides or carries on business, as is provided in section 4 of that law.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 274.*]

2. CARRIERS (§ 37*)—LIVE STOCK SHIPMENT—PENAL SECTION CONSTRUED.

The words "knowingly and willfully" in the penal section of the 28-hour law (Act June 29, 1906, c. 3594, 34 Stat. 607 [U. S. Comp. St. Supp. 1907, p. 918]) cannot be disregarded, because they describe an essential element of every right to the penalty therein prescribed.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 37.*]

3. CARRIERS (§ 37*)—LIVE STOCK SHIPMENTS—"KNOWINGLY" DEFINED.

"Knowingly," as used in the penal section of the 28-hour law (Act June 29, 1906, c. 3594, 34 Stat. 607 [U. S. Comp. St. Supp. 1907, p. 918]), means with a knowledge of the facts which taken together constitute the failure to comply with the statute, as is the case where one carrier receives from another a car loaded with cattle, and, with knowledge of how long they then had been confined in the car without rest, water, or food, prolongs the confinement until the statutory limit is exceeded.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 37.*

For other definitions, see Words and Phrases, vol. 5, pp. 3937–3939.]

4. CARRIERS (§ 37*)—LIVE STOCK SHIPMENTS—"WILLFULLY" DEFINED.

"Willfully," as used in the penal section of the 28-hour law (Act June 29, 1906, c. 3594, 34 Stat. 607 [U. S. Comp. St. Supp. 1907, p. 918]), means purposely or obstinately, and is designed to describe the attitude of a carrier who, having a free will or choice, either intentionally disregards the statute or is plainly indifferent to its requirements.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 37.*

For other definitions, see Words and Phrases, vol. 8, pp. 7468–7481, 7835–7836.]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Western District of Missouri.

W. F. Evans, E. P. Mann, and J. T. Woodruff, for plaintiff in error.

Leslie J. Lyons, Asst. U. S. Atty. (A. S. Van Valkenburgh, U. S. Atty., on the brief).

Before SANBORN and VAN DEVANTER, Circuit Judges, and W. H. MUNGER, District Judge.

VAN DEVANTER, Circuit Judge. This was an action to recover a penalty for an alleged failure to comply with the provisions of section 1 of the act of June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

St. Supp. 1907, p. 918), known as the "28-hour law." The verdict and judgment were against the defendant, and it prosecutes this writ of error.

The alleged failure to comply with the statute occurred in what was then the Indian Territory, and not in the district wherein the action was brought and tried. Because of this, it is urged that the Circuit Court was without jurisdiction; the argument being that a failure to comply with the statute is a crime, that an action to enforce the penalty, even though civil in form, is in effect a criminal prosecution, and therefore that section 2 of article 3 of the Constitution and the sixth amendment thereto require that the trial of such a case be had in the district wherein the failure occurs. There is at least one sufficient reason why this objection to the jurisdiction must fail. Section 2 of article 3 declares in respect of the place of trial for crimes:

"But when not committed within any state, the trial shall be at such place or places as the Congress may by law have directed."

And the Supreme Court, in passing upon the effect of that section and of the sixth amendment, has repeatedly held that a crime committed against the laws of the United States, out of the limits of a state, is not local, but may be tried at such place as Congress shall designate by law. United States v. Dawson, 15 How. 467, 487, 14 L. Ed. 775; United States v. Jackalow, 1 Black, 484, 486, 17 L. Ed. 225; Cook v. United States, 138 U. S. 157, 181, 11 Sup. Ct. 268, 34 L. Ed. 906. In section 4 of the 28-hour law Congress has directed that the action to recover a penalty incurred thereunder be brought in the district where the failure occurs, or in that wherein the defendant resides or carries on business. The defendant is a Missouri corporation, and carries on business within the district wherein the action was brought and tried. If, then, it were conceded, which it is not, that such a failure is a crime and that an action to recover the penalty therefor is in effect a criminal prosecution, the jurisdiction of the Circuit Court in this instance would still be beyond question.

The government's petition, when stripped of details not here material, charged that the defendant, while carrying upon its railroad certain cattle in transit from Comanche in the Indian Territory to National Stockyards in Illinois, failed to comply with the provisions of section 1 of the act before named, in that it unloaded the cattle into a pen at Seneca, an intermediate station, for rest, water, and feeding when the pen was not properly equipped for these purposes, because, first, it was too small to enable the cattle to obtain required rest; second, there were no water troughs or other facilities in the pen for watering cattle; and, third, there were no hay racks or feed troughs therein into which hay or other feed could be placed for cattle, and that in so failing to comply with the statute the defendant acted both knowingly and willfully. The answer denied each and all of these allegations.

As properly reflecting the position taken by the government in the course of the trial, we extract the following from its brief in this court:

"The issues were confined in this very narrow compass, to wit: Were the cattle unloaded by plaintiff in error into pens properly equipped for rest, feed, and water? No question is presented * * * as to con-

finement of the cattle for a period greater than that allowed by law, and no question is involved as to the manner of the unloading, or as to the quantity or quality of the feed and water furnished; the sole question being as to whether or not the plaintiff in error unloaded the cattle into pens properly equipped for rest, feed, and water as required by statute."

At the conclusion of all the evidence the defendant requested that a verdict be directed in its favor, and error is assigned upon the denial of that request. It will be assumed, but without so deciding, that the statute is directed not merely against the continuous confinement of cattle in cars beyond the prescribed period of 28 or 36 hours, as the case may be, without rest, water, or food, but also against unloading them for rest, water, and feeding into pens not properly equipped therefor, that the pen into which these cattle were unloaded was not properly equipped in the sense of the statute, and that ordinarily to unload cattle into such a pen for rest, water, and feeding is to fail to comply with the statute; and, with these matters so disposed of, we will consider only whether there was any substantial evidence from which the jury reasonably could have found that the defendant knowingly and willfully failed to comply with the statute in this instance. We say "knowingly and willfully" because, as was recently said by Judge Adams in speaking for this court, "it appears that section 1 creates a duty to be performed by carriers, and that section 3 imposes a penalty not for the failure to perform the duty, but only when the carrier 'knowingly and willfully' fails in that regard." United States v. Union Pacific R. R. Co. (C. C. A.) 169 Fed. 65. The qualifying words cannot be disregarded. They mean something, and whatever that may be is an essential element of every right to the penalty. "Knowingly" evidently means with a knowledge of the facts which taken together constitute the failure to comply with the statute, as is the case where one carrier receives from another a car loaded with cattle, and, with knowledge of how long they then had been confined in the car without rest, water, or food, prolongs the confinement until the statutory limit is exceeded. "Willfully" means something not expressed by "knowingly," else both would not be used conjunctively. And presumptively it means something not expressed by "willingly," else the change from that word would not have been made when the old statute (Rev. St. §§ 4386–4390 [U. S. Comp. St. 1901, pp. 2995–2997]) was being re-enacted. Crawford v. Burke, 195 U. S. 176, 190, 25 Sup. Ct. 9, 49 L. Ed. 147; Hopper v. Denver, etc., Co., 84 C. C. A. 21, 24, 155 Fed. 273, 276. But it does not mean with intent to injure the cattle or to inflict loss upon their owner because such intent on the part of a carrier is hardly within the pale of actual experience or reasonable supposition. United States v. Union Pacific R. R. Co., supra. So, giving effect to these considerations, we are persuaded that it means purposely or obstinately and is designed to describe the attitude of a carrier, who, having a free will or choice, either intentionally disregards the statute or is plainly indifferent to its requirements.

The evidence was practically free from contradiction, and established these facts: The pen at Seneca afforded approximately 48 square feet of space for each animal, or about the space embraced in an ordi-

nary stall in a stable. The ground therein was dry and in good condition, and the surrounding fence was sufficient. Cattle unloaded therein could be watered by driving them along a public lane to a creek distant 515 yards from the pen, and they could be fed in the pen by strewing hay about upon the ground. These cattle were watered and fed in that way, but not as advantageously as if proper facilities for supplying their needs had been present in the pen. Seneca was a small waystation, and the pen there was seldom used for resting, watering, and feeding cattle, and then only in cases of emergency. The defendant maintained extensive and properly equipped pens for those purposes at Monett and Springfield, which are respectively 43 and 87 miles east of Seneca. When these cattle were loaded into the cars at Comanche, which was on the line of a connecting carrier, the period of confinement was extended from 28 hours to 36 hours at the written request of the person in custody of the cattle, and that was done in the reasonable expectation on the part of both the custodian and the connecting carrier that the cattle could be carried to Monett or Springfield within that period. And when the cattle were started from the connecting point, at which they were delivered to the defendant, there remained enough of the 36 hours to justify a reasonable expectation that the run to Monett or Springfield could be completed within that time. No storm or bad weather intervened, but other occurrences in the course of the run produced such delays that 35 of the 36 hours were gone when the cattle reached Seneca. Monett could not be reached within the remaining hour, and it was in that situation that the cattle were unloaded at the Seneca pen for rest, water, and feeding. They were not unloaded, rested, watered, or fed between Comanche and Seneca. When the defendant obtained knowledge of how long the cattle had been confined in the cars without rest, water, or food before they were delivered to it was not shown, save as it appeared that it had knowledge thereof when they reached Seneca.

There was no claim that the occurrences producing the delay after the run from the connecting point was begun should have been foreseen before that run was undertaken, or that the defendant did not exercise reasonable diligence to reach Monett within the 36 hours, or that the cattle were carried by any properly equipped pen after it became reasonably certain that Monett could not be reached within that period, or that the defendant did not maintain properly equipped pens sufficient in number and location to meet the requirements of the traffic reasonably to have been anticipated, or that it should have proceeded with the cattle to Monett instead of unloading them at Seneca, but, on the contrary, the sole claim was that the pen was not properly equipped in the sense of the statute. Indeed, after filing the petition, the government seems to have proceeded as if the qualifying words "knowingly and willfully" were not in the penal section, and in its brief in this court it is said:

"The issue in the case is confined to the one proposition, viz.: Was or was not the pen into which these cattle were unloaded by the defendant company properly equipped for resting, watering, and feeding? If it was not, then the defendant company is guilty."

The same omission occurred in the court's charge to the jury; no reference being made therein to the qualifying words of the penal section or to their effect upon the government's asserted right of recovery.

Without question the defendant at the time of unloading the cattle into the pen at Seneca had full knowledge of its size and state of equipment and designed to use it in resting, watering and feeding the cattle, but considering the unexpected situation or emergency in which the defendant, without any claimed fault on its part, was required to act, and considering the fitness of the pen for use in such an unexpected situation or emergency, we are of opinion that it reasonably cannot be said that the defendant had a free will or choice and either intentionally disregarded the statute or was plainly indifferent to its requirements. Indeed, it would better comport with reason to say that in the circumstances the defendant manifested a disposition to respect the statute as nearly as it could, rather than to disregard or be indifferent to it. It follows, as we think, that the request for a directed verdict in the defendant's favor ought to have been sustained.

The judgment is accordingly reversed, with a direction for a new trial.