## UNITED STATES v. LITTLE ROCK PACKING CO. et al.
### Cr. No. 15299.

United States District Court
E. D. Arkansas, W. D.
Feb. 27, 1952.

William S. Tyson, Solicitor, U. S. Department of Labor, Washington, D.C., Earl Street, Regional Atty., U. S. Department of Labor, Harry Campbell, Jr., Asst. Regional

528

Atty., U. S. Department of Labor, Dallas, Tex., for petitioner. ·

Owens, Ehrman & McHaney, E. L. McHaney, Jr., and John Lofton, Jr., Little Rock, Ark., for respondents.

LEMLEY, District Judge.

This is a proceeding brought by the United States of America as petitioner, to secure an adjudication of civil and criminal contempt against the respondents, Little Rock Packing Company, a corporation, Chris Finkbeiner and Otto Finkbeiner, Jr., for alleged violations of an injunction issued by this Court on September 14, 1942, pursuant to Section 17 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 217.

The Court having heard the evidence submitted both on the part of the petitioner and the respondents, doth find the facts and doth state conclusions of law, as follows:

### I. Findings of Fact.

#### 1.

This is a contempt proceeding brought in the name of the United States at the instance of Maurice J. Tobin, Secretary of Labor, against the Little Rock Packing Company, a corporation, Chris Finkbeiner and Otto Finkbeiner, Jr., the latter two of which respondents are, respectively, the president and vice-president of the corporation. Petitioner originally sought to have all of the respondents adjudged guilty of both criminal and civil contempt for violating certain provisions of an injunction issued by this Court on September 14, 1942 in a cause then pending herein entitled, "Philip B. Fleming, Administrator of the Wage and Hour Division, United States Department of Labor, Plaintiff, vs. Little Rock Packing Company, a corporation, Defendant", said cause being Civil Action No. 503 on the docket of this Court; said injunction restrained the Little Rock Packing Company, "its officers and superintendent, personally or through their agents, servants and employees" from violating the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., in certain respects hereinafter to be noted. At the conclusion of Petitioner's evidence, it moved to dismiss the criminal contempt charges against the individual Respondents, which motion was granted, and the case now stands as a criminal and civil contempt proceeding against the corporation, and as a civil contempt proceeding against the individual respondents.

#### 2.

The injunction above referred to specifically enjoined the corporation and its privies from employing any of its employees for a workweek longer than 40 hours unless such employees received compensation for their employment in excess of 40 hours in such workweek at a rate not less than one and one-half times the regular rate at which they were employed. Said injunction further restrained the corporation and its privies from: "Failing to make, keep and preserve records of the persons employed by it and of the wages, hours and other conditions and practices of employment maintained by it, as prescribed by the regulations, as amended, of the said Administrator issued pursuant to Section 11(c) of the Act * * * or by any amendments to such regulations, and particularly, but not in limitation of the provisions of this paragraph, from failing to make, keep, and preserve records of the hours worked each workday and each workweek by each of its said employees and of the total wages paid to each of its said employees for each workweek". At the time that this injunction was issued Chris Finkbeiner and Otto Finkbeiner, Jr., were not officers of the Little Rock Packing Company: nor were they parties to the original injunction proceedings. Otto Finkbeiner, Sr., who was president of the corporation at the time the injunction was issued is now dead.

#### 3.

Petitioner contends that the Respondents have violated the injunction in the following respects:

(a) That they have employed certain of their employees for workweeks longer than 40 hours and have failed and refused to compensate them for their employment in excess of 40 hours per week at rates not less than one and one-half times the regular rates at which they were employed.

(b) That they have failed to make, keep and preserve adequate and accurate records of the persons employed by them and of the wages, hours and other conditions and practices of employment maintained by them "as are prescribed by Section 11(c) of the Act and the regulations of the Administrator of the Wage and Hour Division, and of the Secretary of Labor, issued pursuant thereto".

Petitioner further contends that as far as the corporation is concerned, the alleged violations were wilfull, and that it is guilty of a criminal as well as a civil contempt. As stated, Petitioner now contends that the individual respondents are only guilty of civil contempt.

Petitioner asks the Court to punish the corporation for criminal contempt and asks further that all of the Respondents be adjudged in civil contempt and punished therefor by a compensatory fine "to compensate and reimburse the Secretary for the costs and expenses of investigating, instituting and maintaining this action", and that they be required to pay "to each of said employees an amount equal to the difference between what the respondents have actually paid to the respective employees during the period from the entry of the court's judgment to date, and the amounts defendants should have paid to each of their employees had they not failed and refused to obey the judgment of the court."

### 4.

In their responsive pleadings the Respondents deny that they have violated any of the provisions of the judgment of this Court; alternatively, they allege that if any violations have taken place, they were not wilful or knowing but were inadvertent and committed without knowledge on the part of the Respondents that they were in violation of the injunction or of the Act; and they further allege that any violations of which they may have been guilty were of a trivial and minor nature.

Respondents' prayer is that the petition be dismissed, and, further, that the injunction heretofore issued by the Court be dissolved on the ground that it "is unduly burdensome and onerous on these respondents, and for the reason that the respondents have in good faith complied therewith for a period of more than nine years, and there is no just cause for said injunction to be continued in full force and effect."

With respect to the petitioner's claim that respondents should be required to pay back wages, respondents, in addition to their other defenses, specifically plead that the Portal-to-Portal Act of 1947, 29 U.S. C.A. § 251ff, constitutes a bar to the granting of any relief as prayed in the petition as to any period of time more that two years prior to the filing of the petition herein.

### 5.

Petitioner does not contend that the injunction of this Court or the Act has been violated by the Respondents with respect to any employees of the Little Rock Packing Company other than the nonexempt office employees of said Company. As to such employees, it is contended that they were not paid overtime compensation in accordance with Section 7 of the Act and, further, that the records kept by the Packing Company did not accurately and correctly reflect the hours actually worked by the nonexempt office employees or the compensation actually paid for such work, and that the hourly rates of pay set up on the books and records of the Packing Company for such employees were fictitious.

The parties have stipulated as to the identity of the nonexempt office employees who were employed by the Company subsequent to the entry of the injunction, and have further stipulated that such employees were, during their respective periods of employment, "engaged in interstate commerce or in the production of goods for interstate commerce within the meaning of the Fair Labor Standards Act of 1938". It has been further stipulated that if the theory of the Government that the nonexempt office employees were not properly paid in accordance with the Act is correct, the amounts of the underpayments are as set forth in a computation agreed upon by the parties and brought into the record as Petitioner's Exhibit "T".

### 6.

The total number of office employees with respect to whom Petitioner contends violations occurred is 16 individuals, spread over the entire period of time between the entry of the injunction and the filing of the instant petition. At no single time did the number of nonexempt office employees exceed 4 to 6.

The Little Rock Packing Company is an Arkansas corporation, having its office and principal place of business at Little Rock, Arkansas; it is engaged in the business of slaughtering pork and beef and processing pork, beef, and other meat products. At times during the period relevant hereto the Packing Company had in its employ in excess of 100 persons in addition to the office employees, and, as stated, no complaint is made by the Petitioner as to the method of payment of said employees, and the court finds that the Company has complied with the injunction and with the Act as respects the employment of said employees.

### 7.

Since the entry of the injunction in 1942, the Packing Company, its managing officers, and supervisory employees have conscientiously and in good faith endeavored to abide by the terms thereof and to comply in all respects with the Fair Labor Standards Act, and have sincerely believed at all times that they have been in full compliance with said injunction and with the Act.

No investigation of the Company's operations or of its employment and payroll practices and procedures was made by the Wage and Hour Division from the issuance of the injunction up until June of 1951, nearly nine years later; in June of 1951, or shortly prior thereto, the Little Rock Office of the Division received an anonymous complaint as to the operations of the Company, and an investigation was made. The Company was first investigated in June of 1951, and again in August of the same year; the investigations were most searching and thorough and covered all of the employees of the Packing Company; no violations were discovered as to any employees, however, except that the Division took the position that violations were occurring with respect to the nonexempt office employees. As to them, it was contended that they were not being properly paid for work in excess of 40 hours per week, and that their time and payroll records were inaccurate.

It is the theory of the petitioner that the nonexempt office employees were compensated on a salary basis with no additional compensation as to overtime for hours in excess of 40 in the workweek; that the hourly rates of pay set upon the payroll ledger of the Packing company were fictitious and did not actually govern the compensation received by the employees; that each of the said employees worked more than 40 hours per week, and that they did not receive overtime compensation in accordance with the requirements of the injunction and the Act.

Respondents contend, on the other hand, that the nonexempt office employees were employed at a bona fide hourly rate at all times equalling or exceeding the minimum hourly rate as provided by the Fair Labor Standards Act and were paid not less than one and one-half times their said hourly rate of pay for all hours of work in excess of forty during any one week; that said employees were guaranteed a certain number of hours of work per week for which they were paid, whether they worked that number of hours or not; that said office employees knew that they were employed upon an hourly rate and that they were guaranteed a minimum weekly wage, predicated upon an hourly rate with time and one-half for overtime, and that the employees knew these facts, understood the arrangement, and were satisfied with it. Respondents further contend that this was a legitimate arrangement not entered into with intent to defeat or evade the Act or the injunction but with the bona fide purpose and intent of complying therewith. While respondents concede that the time and payroll records for the nonexempt office employees do not in every case reflect the actual number of hours worked by the respective employees during the periods covered by said records, they contend that these inaccuracies constitute, at most, trivial, unintentional and technical violations of the law and of the injunction.

## 8.

The Court finds that each of the nonexempt office employees involved in this case was employed by the Packing Company at a bona fide hourly rate at all times equalling or exceeding the minimum hourly rate as provided by the Fair Labor Standards Act; that the contract of employment of each of such employees provided for compensation at an hourly rate, including time and one-half for overtime, that each of such employees was guaranteed by the Packing Company a certain number of hours of work per week and was paid for such hours at the agreed rate, including time and one-half for overtime, whether she actually worked the guaranteed number of hours or not; that each of such employees understood that she was being employed at an hourly rate of pay, as aforesaid; that each employee knew what her hourly rate of pay was, and was satisfied with the arrangement. That the guaranteed weekly wage of each employee was predicated upon an actual hourly rate of pay with time and one-half for overtime. The Court further finds that in certain cases such employees actually worked the full number of guaranteed hours; that they were always subject to being required to work the full number of guaranteed hours, and that they always worked such number of hours when it was necessary to complete the week's work. In no case did any of such employees work in excess of the guaranteed hours, nor did any employee do any work for which she was not compensated as required by the Act.

The hours of work in the Little Rock Packing Company, as in other packing companies, were reasonably regular from Mondays through Fridays, but were irregular on Saturdays when the week's work would be wound up. Depending upon the volume of business transacted during the preceding five days, the office force might complete its labors for the week within a few hours in the forenoon on Saturday, or it might be required to work all day in order to finish. The policy of the Company was to pay its office force for a definite number of hours on Saturdays whether they worked those hours or not. If the office force finished early on Saturdays, the employees could go home and received full pay; on the other hand, if it took the full number of guaranteed hours to complete the week's work, they were expected to work the full number of such hours.

Had the office employees remained on the job for the full number of guaranteed hours without doing anything, there would be no question as to the legality of the method by which they were paid; furthermore, had the employees been paid only for the hours they actually worked, each one would have received less money than she in fact received under the Company's plan.

The Company's method of compensating its employees was not artificial or colorable, nor was it a device to evade the requirements of the Court's injunction or of the Act; on the contrary, it was entered into in good faith and with the intent to comply with the letter and spirit of the injunction and the Act, and respondents have always believed that it did comply with said injunction and statute.

## 9.

As stated, the payroll records of the nonexempt office employees do not, in cases, reflect the actual hours worked by the respective employees in a given workweek, and in this respect said records are technically inaccurate and do not comply with the injunction. The inaccuracies, however, are trivial, and they deceived and prejudiced no one. All of the office employees worked at one time or another on said records and knew how they were being kept and how their compensation was computed. Said records are now being properly kept and maintained.

## 10.

With respect to the charge of criminal contempt against the Company, there is no evidence indicating that the Company, or its officers and employees consciously violated the Fair Labor Standards Act or the injunction, or that it or they wholly disregarded the law or the injunction, or pursued their course of conduct without making any reasonable effort to determine whether or not it constituted a violation

of the law or of said injunction. See Nabob Oil Co. v. U. S., 10 Cir., 190 F.2d 478, 479. Nor is there any evidence that the Company, its officers and employees have intentionally or purposely, or obstinately disregarded either the law or the injunction, or that it or they have been plainly indifferent to the requirements thereof. See St. Louis & S. F. R. Co. v. U. S., 8 Cir., 169 F. 69. Therefore, it cannot be said that any violation of which the Company may have been guilty was wilfull.

On the other hand, the Court finds that at all times since the entry of said injunction the Company and its officials have been keenly aware of the requirements thereof and of the Act, and conscientiously endeavored at all times to comply therewith, and, in our opinion, have done so with the minor exception relating to the records which has been heretofore noted. Furthermore, respondents immediately and fully complied with every recommendation made by the investigator for the Wage and Hour Division in the course of his said investigations with respect to records and otherwise, including the purchase and installation of a timeclock.

The Court further finds in this connection that in December of 1951, the Company had in its employ 99 employees, of which number five were employed in nonsupervisory clerical positions in the office. The court further finds that in the years from 1942 to 1950, inclusive, the company had in its employ a minimum of 55 employees and a maximum of 120 employees in December of each of said years, and that there were employed in the office in nonsupervisory clerical positions from one to six employees. In December of 1951, the clerical employees in the office had a total weekly payroll of approximately $310 and the total plant payroll of $5,800. These figures demonstrate the triviality of the violations alleged against the respondents, and in the Court's opinion, negative the idea of wilfullness on their part.

11.

The petitioner has expended in the investigation and prosecution of the civil contempt proceeding the sum of $400.

12.

The Company has operated under the shadow of this injunction for almost 10 years, and for nearly nine of those years no investigation of its operations was made; during that time it conscientiously undertook to abide by the law and the terms of the injunction, and during said period of time relations between the respondents and the nonexempt office employees were good, the latter being fully compensated for their work and being treated with a kindness and consideration, a continuation of which, in certain respects at least, may have been rendered impossible by the petitioner's attitude in this case.

When respondents' plant was investigated in June and August of 1951, the only practices found to be questionable were the method of paying the office employees, which has been mentioned, and the method of keeping the time and payroll records of these employees; as pointed out said employees make up only a small portion of the total number of employees of the Company, and the amount of underpayments alleged by petitioner is insignificant compared with the total payroll of the Company. Despite the trivial nature of the alleged violations, the cooperative attitude of the respondents, and all efforts made by the president of the company to convince the Wage and Hour Division of the innocence and good faith of himself and his company, which included a trip from Little Rock to Dallas, the Division insisted upon filing the instant proceedings and requiring the respondents to stand their trial for both criminal and civil contempt; the charges of criminal contempt have completely broken down against all of the respondents, and the charge of civil contempt has been sustained only on the most technical grounds and only in the one respect which will be mentioned in the Court's conclusions of law. Yet these proceedings, largely unjustified in the Court's opinion, have caused the respondents unmerited adverse publicity as well as the trouble, worry, and expense incident to defending the case.

The Court is satisfied from the testimony herein and from the attitude, manner, and demeanor of the officers and employees

of the Company that there is no reason to believe that future violations of the Act will occur at the Little Rock Packing Company, and in the Court's opinion it would be under the circumstances unjust and inequitable, as well as unnecessary, to retain the injunction in force any longer, and that it should be dissolved.

## II. Conclusions of Law

### 1.

The court has jurisdiction of this cause and of the parties thereto.

### 2.

The charge of criminal contempt against the Little Rock Packing Company will be dismissed.

### 3.

■ Under the circumstances set forth in our Findings of Fact, the method used by the respondents in compensating the nonexempt office employees of the Little Rock Packing Company was not in violation of Section 7 of the Fair Labor Standards Act, or of any other provision of said Act, or of the injunction of this Court, and did not result in underpayments to such employees. See McComb v. Pacific and Atlantic Shippers' Ass'n, 7 Cir., 175 F.2d 411.

### 4.

■ All of the respondents are in civil contempt in that the time and payroll records kept for the nonexempt office employees of said Company do not in all cases correctly reflect the hours actually worked each week by each of such employees.

### 5.

■ In order to purge themselves of their civil contempt Chris Finkbeiner and Otto Finkbeiner, Jr., will each be required to pay a fine of One Dollar. In order to purge itself of civil contempt the Little Rock Packing Company will be required to pay a compensatory fine of $400 to reimburse petitioner for the expense of investigating, instituting and prosecuting this case. See Tobin v. Mason & Dixon Lines, Inc., D.C.Tenn., 102 F.Supp. 466.

### 6.

Upon the respective respondents purging themselves of their civil contempt, as aforesaid, the injunction heretofore entered by the Court will be vacated, dissolved, and set aside.