JAMES A. HANNAH, INC. v. PUBLIC SERVICE COMMISION OF INDIANA ET AL.

[Nos. 19,325 and 19,326. Filed December 6, 1961.]

550

*William M. Evans, Lewis C. Bose,* both of Indianapolis, and *Thomas F. Quinn, Cook, Bose, Buchanan & Evans,* all of Indianapolis, and *Rex H. Fowler,* all of counsel, of Des Moines, Iowa, for appellant.

*Wendell Tennis,* of Sullivan, *Ferdinand Born* and *Walter F. Jones, Jr.,* both of Indianapolis, for appellees.

BIERLY, J.—This is an appeal pursuant to Chapter 189 of the 1957 Acts of the Indiana General Assembly, Burns' Ind. Stat. (1951 Replacement), beginning with

§54-443, from two orders of the Public Service Commission of Indiana in two separate cases.

The "Rate Order" in P.S.C.I., Cause No. 27859, assigned No. 19326 in this court, related principally to a suspension and rejection of certain schedule of Minimum Rates filed with the Public Service Commission of Indiana, hereinafter referred to as "Commission," by James A. Hannah, Inc., hereinafter referred to as "Hannah."

The "Permit Order" in P.S.C.I., Cause No. 27609, assigned No. 19325 in this court, relates to the cancellation of Permit No. 1466-B, 1, which had been issued originally to James A. Hannah Motor Truck Service, Inc., on July 11, 1941, by the Commission to operate certain specified motor carrier service in Indiana.

The two orders herein referred to were decided by the Commission upon an agreed stipulation of facts.

The sole assignment of error by appellant, Hannah, is that:

"(1) The decision, ruling and order of the Public Service Commission is contrary to law."

Appellees filed a petition before this court to consolidate the appeals relating to each order, and said appeals were consolidated by order of this court entered August 11, 1959.

The central issue before the Commission, as agreed by the parties related to the scope of appellant's permit, "and was whether appellant's operating authority as a contract carrier of petroleum products under its existing permit and the applicable statutes, was limited to hauling for the Sinclair Refining Company. The permit case raised additional issues as to whether appellant was a validly organized Indiana Corporation, whether it failed to comply with the rules and regula-

tions of the Commission requiring annual reports, and whether any such failure was grounds for cancellation of its permit." (Appellant's Brief, pp. 2 and 3.)

It appears that if this court determines that Hannah has been issued one permit by the Commission and that permit in accordance with its terms "limits the transportation to be performed to and for the Sinclair Refining Company," (Appellees' Brief, p. 7) then the obvious conclusion would be that the Commission was legally empowered to suspend and cancel the schedule of minimum rates filed by Appellant-Hannah for transportation for shippers, other than for the Sinclair Refining Company.

When this court decides the question as to the scope of permit issued to Hannah by the Commission, the question of the rate case would thereupon be resolved. When this had been determined, there remains one question, one resolved question as to whether the Commission acted within the scope of its duty and authority, prescribed by legislative enactment, in the cancellation of Hannah's Permit No. 1466-B, 1, premised upon the stipulation of facts forming the basis of the Commission's Orders.

Salient paragraphs in the stipulation of facts reflecting evidence relating to the issuance of said Permit No. 1466-B, 1, are herewith set forth primarily because of the importance attached to the scope of the permit, to-wit:

"STIPULATION

"2. That on the 10th day of March, 1941, James A. Hannah Motor Truck Service, Inc., filed an application with the Public Service Commission of Indiana requesting authority to operate motor vehicles intrastate as a contract carrier over the public highways of the State and requested permission to establish service for the transportation of property for the following named contractor:

Sinclair Refining Company, Hammond, Indiana. Copy of such application, which was assigned Docket No. 1466-B, is attached hereto and marked for identification as Exhibit 'A'.

"3. Thereafter, on April 7, 1941, hearing was held on said application and on the 23rd day of April, 1941, an Examiner's recommended report was made public.

"4. That no Exceptions were filed by the applicant, James A. Hannah Motor Truck Service, Inc., to said recommended report.

"5. On May 9, 1941, the Commission issued its order approving the issuance of a Permit, restricted as follows:

"IT IS THEREFORE ORDERED BY THE PUBLIC SERVICE COMMISSION OF INDIANA that a permit to operate motor vehicles as a contract carrier of petroleum products, intrastate, be issued to James A. Hannah Motor Truck Service, Inc., 520 Illinois Building, Indianapolis, Indiana, a corporation, for the Sinclair Refining Company, Hammond, Indiana, over the following routes, to-wit:

"Over all Federal, State, and County Highways in the State of Indiana with the limitation that no shipments of petroleum products shall be transported from Whiting, Indiana as a point of origin. and a copy of such order is attached hereto and marked for identification as Exhibit 'B'.

"6. That the applicant, James A. Hannah Motor Truck Service, Inc., did not file a Petition for further hearing, rehearing or reconsideration of the order approved May 9, 1941.

"7. Thereafter, on June 11, 1941, the actual Permit was issued and a copy of such document is attached hereto and marked for identification as Exhibit 'C'.

"8. The name of the original corporation was changed to James A. Hannah, Inc., by proper action taken in the office of the Secretary of State and a petition was filed on May 16, 1946, with the Commission requesting that the records of the Commission be changed so as to reflect the new name of the original corporation. Copy of such

Petition is attached hereto and marked for identification as Exhibit 'D'.

"9. On May 23, 1946, an order was issued by the Commission changing the corporate name, a copy of which order is attached hereto and marked for identification as Exhibit 'E'.

. . . .

"13. That there have been no applications or petitions filed with the Public Service Commission of Indiana in the name of James A. Hannah, Inc., or James A. Hannah Motor Truck Service, Inc., since May 9, 1941, except those attached as exhibits to this Stipulation."

The record discloses that neither in the petition filed by James A. Hannah Motor Truck Service, Inc., with the Commission, on May 16, 1946, requesting a change of name, nor in the order of the Commission dated May 23, 1946, authorizing said change of name to James A. Hannah, Inc., as sought, was any other matter embraced. This order is referred to in the Stipulation, paragraph 9, as Exhibit 'E', and omitting caption and signatures, follows:

"BY THE COMMISSION

"On the 9th day of May, 1941, the Commission approved an order authorizing the issuance of a permit to operate motor vehicles as a contract carrier of property, intrastate, to James A. Hannah Motor Truck Service, Inc., 520 Illinois Bldg., Indianapolis, Indiana.

"Thereafter on the 16th day of May, 1946, applicant filed a petition with the Commission requesting change of name from James A. Hannah Motor Truck Service, Inc., to James A. Hannah, Inc.

"The Commission, having considered its order approving the issuance of a permit and the applicant's petition for change of name, is of the opinion and now finds that upon surrender for cancellation of 1466-B, 1, or an affidavid in lieu thereof, a permit bearing the same number should be issued to

James A. Hannah, Inc., to operate motor vehicles as a contract carrier of property, intrastate, as hereinafter set out, and it will be so ordered.

"IT IS THEREFORE ORDERED BY THE PUBLIC SERVICE COMMISSISON OF INDIANA that upon surrender for cancellation of 1466-B, 1, or an affidavit in lieu thereof, a permit bearing the same number be issued to James A. Hannah, Inc., 520 Illinois Bldg., Indianapolis, Indiana to operate motor vehicles as a contract carrier of property, intrastate, as follows, to-wit:

Petroleum products for the Sinclair Refining Company.

Over all Federal, State and County highways in the State of Indiana with the limitation that no shipment of petroleum shall be transported from Whiting, Indiana as a point of origin."

Following the issuance of the original permit under date of June 11, 1941, Hannah entered into a carrier contract with Sinclair Refining Company. This contract was cancelled on or about June 5, 1942. No service was ever rendered by appellant under the authority of such permit to the Sinclair Refining Company.

During the period Permit No. 1466-B, 1 was in effect, Hannah entered into carrier contracts with shippers other than Sinclair Refining Company. Also, during this same period, Hannah from time to time filed with the Commission tariffs, schedules and rates applicable to transportation for these and other shippers. These tariffs, schedules and rates were accepted for filing by the Commission without objection. Transportation services were performed for these other shippers continuously without objection by the Commission or by competing carriers.

When Hannah filed with the Commission on May 10, 1941, its application for a contract carrier permit, and subsequently thereto including June 11, 1941, the issuance date of said permit, Section 12(b) of Acts of

General Assembly, 1935, Chapter 287, was in full force
and effect. The closing part thereof, follows:

". . . the application may be granted in whole or
in part, subject to such terms, restrictions and limi-
tations as the commission may determine; other-
wise the application shall be denied."

The 1941 Acts of the General Assembly contain an
amendment of Section 12(b) above referred to by add-
ing thereto a concluding sentence, to-wit:

". . . *The commission shall specify in the permit
the business of the contract carrier covered thereby
and the scope thereof and shall attach to it, at the
time of issuance, and from time to time thereafter,
such reasonable terms, conditions, and limitations
consistent with the character of the holder as a
contract carrier, as justified by the evidence sub-
mitted in the record at the public hearing:* Pro-
vided, however, That no terms, conditions, or limi-
tations shall restrict the right of the carrier to sub-
stitute or add contracts within the scope of the
permit, or to add to his or its equipment and facili-
ties, within the scope of the permit, as the develop-
ment of the business and the demands of the public
may require." (Acts of 1935, ch. 287, §12(b), p.
1412; Acts of 1941, ch. 222, §4, p. 693, §47-1222,
Burns' Ind. Stat., 1961 Cumulative Pocket Supple-
ment, 1952 Replacement. (Our emphasis.)

The 1941 Amendment to the 1935 Act became effec-
tive July 8, 1941, said date being subsequent to the
effective date of the actual permit under date of June
11, 1941.

On January 28, 1958, Hannah published and filed
with the Commission a schedule of minimum rates to
become effective February 28, 1958, applicable to trans-
portation for contract carriers under contract with
Hannah.

February 19, 1958, appellees, as competing contract
carriers, filed objections with the Commission by a pe-
tition entitled "Petition Requesting Rejection and/or

Investigation and Suspension of Proposed Schedule of Minimum Rates No. 2, P.S.C.I. No. 6 issued by James A.. Hannah, President of James A. Hannah, Inc., to become effective February 28, 1958, coupled with a Request that Schedule of Minimum Rates No. 2, P.S.C.I. No. 5 be cancelled." On February 21, 1958, the Commission issued its order cancelling Hannah's rate schedule, which was followed on February 27, 1958, by Hannah filing a Petition for Reconsideration. The Commission on March 7, 1958, acting on said petition, issued its Modified Order permitting Hannah's schedule of rates to continue in effect for limited service for Globe Oil and Refining Company only pending a final order.

Appellees on March 12, 1958, filed with the Commission a "Petition Requesting Citation be Issued to James A. Hannah, President, and James A. Hannah, Inc., to show Cause Why Permit No. 1466-B 1 Should Not Be Cancelled and a Cease and Desist Order Issued . . . From Further Transportation Under Said Permit in Intrastate Commerce." Action was taken on this petition, and on March 13, 1959, the Commission approved an Order Requiring Appellant to Cease and Desist from conducting further transportation within the State.

The action filed on February 19, 1958, which Hannah has referred to as "Rate and Schedule Case" was consolidated before the Commission with the action filed on March 12, 1958, which has been referred to as the "Permit Case."

On March 13, 1959, the day the Commission issued its Order in the "Permit Case," it also issued an Order Suspending and Cancelling Tariffs in the "Rate Shedule Case."

It was on the 31st day of March, 1959, when Hannah filed its Petition for Rehearing in both cases. Subse-

quently, on the 17th day of April, 1959, the Commission approved an order denying the petitions for rehearing. The appeal therefore followed, and as heretofore stated, error assigned in each case is:

"(1). The decision, ruling and order of the Public Service Commission is contrary to law."

But Hannah urges that its carrier contracts made subsequent to July 8, 1941, were legally and lawfully entered into with certain shippers, because the legislative enactment of the 1941 Amendment of the Indiana Motor Vehicle Act, heretofore quoted part, automatically enlarged the scope of its Permit No. 1466-B 1 requiring no action by the Commission. In its order, dated March 13, 1959, cancelling Hannah's Permit, the Commission emphatically took an opposite conclusion. The Commission held that no permittee possessed any authority other than granted and shown in the provisions of its permit; that at no time had the restrictions contained in the Permit held by Hannah's predecessor "been altered, changed or removed and is still in full force and effect." (Appellant's Brief, p. 98.)

The Commission in its lengthy order by way of citation and amplifying its grounds in support of ultimate conclusions said:

". . . In the past years and particularly in the 1940's after the aforementioned amendment to the Motor Vehicle Act became effective, several other permit holders apparently applied for the removal from their permits of the restriction limiting them to operation for certain named shippers. In a well reasoned opinion written by this Commission in a proceeding entitled 'IN THE MANNER OF THE MODIFICATION OF CONTRACT CARRIER PERMIT NO. 1432-B, 1, ISSUED TO NORTH STAR EXPRESS, INC., CHALMERS, INDIANA,' which opinion was issued by this Commission on March 10, 1948; the Commission said on page 4:

" 'This question as to the effect of the 1941 Amendment upon the 1935 Act, insofar as it affects Permits issued under the 1935 Act, containing restrictions restricting Permit Holders to the transportation of property generally or specific commodities for certain designated shippers, has arisen many times in the past. The Commission believes that it has the power to, and in the discharge of its duties should answer this question. The Commission, acting as an administrative tribunal in its legislative capacity as an arm of the Legislature, administers the intent of the Legislature as declared by its Acts. Under the 1935 Act, the Legislature delegated to the Commission authority in the issuing of contract carrier permits to issue such permits subject to such terms, restrictions and limitations as the Commission deemed necessary. Under this delegation of authority the Commission could and did in many instances restrict contract carriers to the transportation for certain designated shippers. In the 1941 Act, amending the 1935 Act, the Legislature removed this authority from the Commission and specifically provided that no terms, conditions or limitations should restrict the right of a contract carrier to substitute or add contracts within the scope of the Permit or to add to his or its equivalent equipment and facilities within the scope of the Permit as the development of the business and the demands of the public required.

" 'The Commission therefore finds that Permits, issued prior to the effective date of the 1941 Amendment to the 1935 Act containing restrictions and conditions such as the conditions and restrictions contained in petitioner's permit, were not affected by the 1941 Amendment and the 1941 Amendment does not confer upon such carriers authority to transport commodities for shippers other than those specified in their permits.' . . .''

Hannah apparently has no quarrel with the decision of the Commission in the *North Star Case*,[1] but it at-

---

1. Opinion written by the P.S.C.I. in a proceeding entitled "IN THE MANNER OF THE MODIFICATION OF CONTRACT CARRIER PERMIT, NO. 1432-B, 1, ISSUED TO NORTH STAR EXPRESS, INC., CHALMERS, INDIANA."

tempts to distinguish that case from the instant case in arguing that the *North Star Case* the carrier, by its action, asserted a right to remove from the sphere of its permit commodity restrictions which admittedly would enlarge the scope of the permit of the contract carrier. Hannah gave approval to the *North Star* decision as follows:

> "*Of course, such application should have been denied. It constituted an attempt to broaden and extend, without notice or hearing, the scope of the permit originally issued. Applicant wanted to substitute for the right to haul for certain shippers certain specialized commodities, the right to haul anything for anyone indiscriminately.* (Permit Transcript, p. 160, ll. 14-19)." (Our emphasis.) See Appellant's Brief, p. 169.

In the instant case, Hannah contends most strenuously that when it sought a change of name by Petition before the Commission, which was granted without notice or hearing, the Permit issued, became a canopy bringing under its fold and protection all of the provisions afforded by the 1941 Amendment of said Section 12 of the Act. It is likewise contended by Hannah that the alleged scope of the enlargement of this permit through the removal of the territorial restriction is clearly distinguished from the holding in the *North Star Case*. We find it difficult to accede to and approve the reasoning by Hannah, that as a matter of principle there is a cogent difference in the appraisal of the enlargement of a permit relating to commodities as compared with an enlargement of a permit relating to territorial restrictions.

When James A. Hannah Motor Truck Service, Inc. filed a petition on May 16, 1946, with the Commission, requesting a change of name on the records of the Corporation to Hannah, the Commission issued an order

changing the name of the corporation to Hannah and reissued the said permit reflecting no change therein other than change of name, which permit retained the original permit number.

Acts 1935, ch. 287, §2, p. 1412 (§47-1212, Burns' Ind. Stat. Annotated, 1952 Replacement) defines "certificate" and "permit" in the Motor Vehicle Act as follows:

"(j)   The term 'certificate' shall mean the certificate of public convenience and necessity issued by the Commission to common carriers, intrastate, or the certificate of authority issued by the commission to common carriers, interstate.

"(k)   The term 'permit' shall mean the permit issued by the commission to contract carriers."

Neither the 1937 nor the 1941 Amendment to said Act altered the above definitions "j" and "k".

It appears from the above definitions of the terms "certificate" and "permit" as pertains to the instant case, that it became mandatory on the part of Hannah to have applied to the Commission through proper procedure, seeking a modification of said existing certificate and permit to embrace such authorized additional services and approval of additional shippers with whom services were sought.

Black's Law Dictionary, Fourth Edition, p. 1298, refers to Wharton and interprets a permit as follows:

"A written license or warrant, issued by a person in authority, empowering the grantee to do some act not forbidden by law, but not allowable without such authority."

We hold in the instant case, that the permit, granted by the Commission upon Hannah's petition for a change of name only, is evidentiary of the fact, and was notice to the public, that Hannah only possessed such authority as was granted by the Commis-

sion, the evidence of which was incorporated in the certificate and the permit.

Appellees contend that the 1941 Amendment was remedial legislation. Black's Law Dictionary Fourth Edition, p. 1457, defines a Remedial Statute thus:

> "One that intends to afford a private remedy to a person injured by the wrongful act. That is designed to correct an existing law, redress an existing grievance or introduce regulations conductive to the public good. In re School Dist. No. 6, Paris and Wyoming Tps., Kent County, 284 Mich. 132, 278 N. W. 792, 797; Bowles v. Trowbridge, D. C. Cal., 60 F. Supp. 48, 49.
>
> . . . .
>
> ". . . These remedial statutes are themselves divided into enlarging statutes, by which the common law is made more comprehensive and extended than it was before, and into restraining statutes, by which it is narrowed down to that which is just and proper. A remedial statute is one which not only remedies defects in the common law but defects in civil jurisprudence generally. M. H. Vestal Co. v. Robertson, 277 Ill. 425, 115 N. E. 629, 631; MacDonald v. Hamilton B. Wills & Co., 199 App. Div. 203, 191 N.Y.S. 566, 568."

We can see in no way how the 1941 Amendment intended to afford a "private remedy to a person injured by the wrongful act." We may assume that the 1941 Amendment was for the purpose to "introduce regulations conducive to the public good," but certainly the legislative intent or interest in the passage of said amendment was not to consider the status of Hannah or any other contract carrier similarly situated.

Even Hannah admits that said amendment was not retroactive in scope.

We think that in order for Hannah to avail itself of the liberalized provisions of said amendment, it was

incumbent upon it to file an application for a ▮ certificate and permit embodying such provisions as it may have deemed itself entitled as under the amendment. As specified in said act, this application would be considered only after a public hearing which was antedated by public notice as prescribed by statute.

§47-1232, Burns' Ind. Stat., 1952 Replacement, provides:

"No person, as defined in this act [§§47-1211—47-1250], shall operate any motor vehicle over the highways of this state for hire without first having obtained a certificate or permit from the commission so to do, and having obtained registration plate or card for each vehicle, as provided in this act. [Acts 1935, ch. 287, §22, p. 1412.]"

This section definitely requires that a carrier must have evidence of its authority and franchise issued him by the Commission by way of a certificate and permit.

Section 23 of the Motor Carrier Act, §47-1233, Burns' Ind. Stat., 1952 Replacement, reads as follows:

"Amendment or revocation of certificate or permit. —Any certificate or permit, upon application of the holder thereof, in the discretion of the commission, may be amended or revoked in whole or in part, or may, upon complaint or on the commission's own initiative, after notice and hearing, be suspended, changed or revoked in whole or in part for wilful failure to comply with any provision of this act [§§47-1211—47-1250], or with any lawful order, rule or regulation prescribed by the commission, or with any term, condition or limitation of such certificate or permit. [Acts 1935, ch. 287, § 23, p. 1412.]"

We hold that the petition by appellant filed with the Commission did not involve any change of ownership of the permit or certificate. Nor was there involved a change of route, nor a change of property to be car-

ried, nor was any additional or less authority granted to the motor carrier operator under its permit. The only change sought was a reissue of the original permit or the issuance of a new permit with the change of name only.

This petition for a change of name filed with the Commission required no hearing by the Commission to determine any matter of public convenience or necessity, nor to appraise any problem relative to highway use or to determine any competitive conditions.

We think that the term "amendments" as referred to in §47-1244 (c), Burns' Ind. Stat., 1952 Replacement (and in force at the time appellant's petition for a change of name was acted upon) refer to substantial amendments which affect a change in the authority granted the motor carrier operator.

The above statute §47-1244 (c), Burns' Ind. 1952 Replacement, *supra,* was amended by Acts 1955, ch. 102, §1, p. 212, sub-section (d), as stated in Burns' 1961 Cumulative Pocket Supp. and is in part as follows:

> "47-1244 (d) All applications for a change in name of common carrier certificates or contract carrier permits, intrastate or interstate, *which do not involve a change in ownership of the operating rights of the certificate or permit holder,* shall be made by verified petition to the commission, . . ." (Our emphasis.)

This amendment by the legislature clarifies and particularizes the question of change of name, and appears to be in harmony in some particulars with the opinion of the Attorney General directed to the Public Service Commission on July 12, 1939. (See Opinions, Attorney General, 1939, p. 194.)

The 1941 Amendment contained no specific provision for an enlargement of the scope of a carrier's permit.

The requirements of an application for a certificate of public convenience and necessity, upon proper notice and at a public hearing, were reinacted in said 1941 Amendment.

It was within the province of Hannah to have submitted an application to the Commission, at the time a petition for a change of name was filed, to have sought a certificate of public convenience and necessity, and if granted, to have had issued an appropriate permit as evidence thereof. This Hannah did not do.

We must hold that any contract made by Hannah with any other shipper than the Sinclair Refining Company for the performance of service under the existing permit was illegal and unauthorized by failure of Hannah to acquire a certificate and permit to that effect; that the filing of any tariff rates agreed upon with any shipper other than Sinclair possessed no legal capacity since such rates must have been founded on the existing permit and certificate, which, as heretofore stated, we hold to be ineffectual for any shipper other than Sinclair.

Hannah further concedes that services with Sinclair while provided for in a carrier contract had not really been carried into effect.

By any other holding on our part, we would be supporting an impossible legal conclusion that the Commission was prohibited from exercising any power of control over any and all carriers who had been issued certificates and permits prior to the effective date of the 1941 Amendment to Section 12 of said Act.

Had there been no litigation in the Marion Superior Court relative to the cancellation and reinstatement of Hannah's certificate and permit, the Commission was legally justified in its decision in cancelling said certificate and permit since this act of the Commission merely

proclaimed offical that which had been already rendered a nullity by Hannah's failure to comply with its carrier contract with Sinclair Refining Company.

The legislative grant of authority and power vested in the Public Service Commission by virtue of §47-1222, Burns' Ind. Stat., 1961 Cumulative Pocket Suppl., which included the 1941 Amendment is far-reaching and comprehensive.

It is noted that actions may be taken "in its opinion" as to whether a certificate and permit may or may not be granted an applicant by the Commission. In passing on an application for a certificate and permit, salient factors considered by the Commission are whether an application would, if granted, adversely affect the efficient public service of an authorized common carrier covering the same territory, whether the condition of vehicles intended for use and their effect upon the public highways, if used, would injure and damage the highways, whether a contemplated highway sought for use by the applicant was suitable and whether the general public would be adversely affected.

It is the province of the Commission solely to determine the scope of applicant's permit. The provisions of the 1941 Amendment are not self executing. It is for the Commission to determine the public convenience and necessity as no common carrier may operate without the Commission's certificate and permit.

The Public Service Commission in its legislative grant of authority relative to the issuance of a certificate of public convenience and necessity and a permit is accorded a unique and far-reaching sphere of action among administrative bodies. This we think is proper.

We hold that the decision, ruling and order of the Commission is sustained by sufficient evidence and is not contrary to law.

Cause affirmed.

Ryan, C. J., Kelley, P. J., and Cooper, Gonas, Myers and Pfaff, JJ., concur.

Ax, J., concurs in result.

NOTE.—Reported in 178 N. E. 2d 561.