**HABIG TRUCKING & EXCAVATING, INC., Respondent-Appellant,**

**Black Beauty Trucking Company, Inc., Intervenor Party-Appellant,**

v.

**PUBLIC SERVICE COMMISSION OF INDIANA, State of Indiana, Dale Bland Trucking, Inc., Rose Brothers Trucking, Inc., and McVey Trucking, Inc., Complainant-Appellees.**

No. 2–683 A 187.

Court of Appeals of Indiana, Second District.

Aug. 1, 1984.

Rehearing Denied Sept. 12, 1984.

Alki E. Scopelitis, Scopelitis & Garvin, Indianapolis, for respondent-appellant.

Donald W. Smith, Smith & Murdock, Indianapolis, for Dale Bland Trucking, Inc.

Linley E. Pearson, Atty. Gen., for complainant-appellees.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

Appellants, Habig Trucking & Excavating, Inc., and Black Beauty Trucking Com-

pany (Habig) and (Black Beauty), appeal from a decision of the Public Service Commission of Indiana (PSC) to amend Habig's certificate of public convenience and necessity, in an action by Gibson Trucking Company, Dale Bland Trucking, Rose Brothers Trucking and Dump Trucks, Inc. (complainants), for revocation of Habig's certificate.

## STATEMENT OF THE FACTS

Habig and complainants are motor common carriers. On February 1, 1972, Habig was granted a certificate of public convenience and necessity by PSC, which permitted Habig to operate motor vehicles as a common carrier of property, intrastate, upon such public highways in the state of Indiana as hereinafter set out, subject to the following conditions and limitations, to-wit:

Sand, gravel, stone, brick, tile, dirt, cement, aggregate, plaster, cinders, coal, lumber, and road building materials and those commodities usually hauled in dump trucks,

Between points and places in the state of Indiana, over all Federal, State, and County Highways, over irregular route.

RESTRICTION: The transportation services herein authorized are restricted to those performed within a fifty (50) mile operations from point of origin to destination.

Habig's certificate contained a condition which reads in pertinent part:

The holder thereof shall render reasonable continuous and adequate service to the public in pursuance of the authority herein granted, and that failure to do so shall constitute an abandonment of the rights granted herein and shall operate as a forfeiture of said certificate or permit.

Black Beauty sought to purchase Habig's certificate by way of a joint application dated May 24, 1982. Complainants filed a complaint for revocation of Habig's certificate on June 29, 1982, alleging dormancy. PSC denied Habig's motion to consolidate the complaint with Black Beauty's

pending sale and transfer application. Following a hearing before an administrative law judge, the PSC ordered that Habig's certificate be amended in part to read:

Sand, gravel, stone, brick, tile, dirt, cement, aggregate, plaster, cinders, lumber, road building materials and those commodities usually hauled in dump trucks, (except coal),

Between points in the State of Indiana, within a fifty (50) mile radius of Bluffton, Indiana.

This amendment was based on PSC's findings that Habig's previous operations had been completely confined to points within a 50-mile radius of Bluffton, Indiana, and that Habig had not advertised or sought business outside of this area. Some of its operations were on a "for hire" basis, while others were on its own behalf as a private carrier, however, none of them involved the transportation of coal. Habig and Black Beauty, as an intervenor, appeal from PSC's order.

## ISSUES

Habig presents four issues:

I. Whether PSC's findings were insufficient to support its decision because no finding was made that Habig "willfully" violated a condition of its certificate.

II. Whether substantial evidence was presented to support a conclusion that Habig willfully failed to comply with the "reasonable, continuous and adequate service" condition of its certificate.

III. Whether PSC's findings were insufficient to support its decision because no finding was made regarding public convenience and necessity as it affected limitation of Habig's certificate.

IV. Whether PSC erred in failing to consolidate Black Beauty's sale and transfer proceeding with the complaint proceeding.

## DISCUSSION AND DECISION

■ As stated in *Southern Railway Company v. Board of Commissioners of Vanderburgh County,* (1981) Ind.App., 426 N.E.2d 445, there are two levels of judicial review of a PSC determination. First, PSC's determination must contain specific findings of fact on all determinations material to its order. Second, we must determine whether there is substantial evidence to support the PSC's findings of fact. We will not reweigh the evidence or substitute our judgment for that of the PSC in reviewing the sufficiency of the evidence. *Coastal Tank Lines, Inc. v. Propane Transport, Inc.,* (1981) Ind.App., 416 N.E.2d 440.

■ IND.CODE 8–2–7–32 grants the PSC discretion to amend a certificate of public convenience and necessity for willful failure to comply with a term of that certificate. Habig concentrates on the word "willfully", arguing the PSC found no willful violation of Habig's certificate. Habig's emphasis is misplaced. Willfully, in the context of this case, must mean intentionally, or voluntarily. *See United States v. Murdock,* (1933) 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed.2d 381.

In *St. Louis & S.F.R. Co. v. United States,* (8th Cir.1909) 169 F. 69, a carrier received a cattle car from another carrier and without knowledge of how long the cows had already been confined, kept them in the cars longer than the statutory limit. In deciding what constituted a willful violation of the statute the court stated:

" 'Willfully' means something not expressed by 'knowingly', else both would not be used conjunctively ... But it does not mean with intent to injure the cattle or to inflict loss upon their owner because such intent on the part of a carrier is hardly within the pale of actual experience or reasonable supposition.... 'So, giving effect to these considerations, we are persuaded that it means purposely or obstinately and is designed to describe the attitude of a carrier, who, having a free will or choice, either intentionally disregards the statute or is plainly indifferent to its requirements.' " 169 F. at 71.

■ Applying this to the case at bar, we note that Habig did not commit a positive act in violation of its certificate or a statute. Rather, complainants alleged, and the PSC found that Habig did not comply with the condition of its certificate which required reasonable, continuous and adequate service as authorized by the PSC, because it limited its services to within 50 miles of its principal place of business, did not try to expand its work radius, and did not transport coal. Thus, Habig failed to provide any coal service or service to the remainder of the state through its free will, either with disregard of the condition or indifference to it. According to the condition, this amounts to abandonment of those rights granted to Habig under the certificate. Willfulness can be imputed from the omission to act itself. The fact that the PSC did not include the word "willfully" in its findings does not render them inadequate to support its decision.

■ *Will v. P.S.C.I., Evansville City Transit, Inc.,* (1969) 144 Ind.App. 463, 247 N.E.2d 98, is easily distinguished. There, the respondent, carrier was acting illegally, and thus, ascertainment of willful intent was necessary. Willfulness could not be imputed from the facts and no evidence was introduced showing the respondent knew his acts were illegal. Here, Habig admitted its services were confined to a 50-mile radius of Bluffton, and had never included the transportation of coal. Habig acknowledged it had not filed a tariff with the PSC and had not actively sought coal business or any other business outside of the Bluffton area. Poor health of the partners and the non-union nature of its operations were given as reasons for Habig's limited business, however, these do not change the willfulness of Habig's acts. The uncontroverted evidence is sufficient to support a finding of willfulness as that term is defined above. Habig voluntarily limited its services without regard to the abandonment condition of its certificate,

and thereby failed to provide reasonable, continuous and adequate service to the limits authorized by the PSC.

■ Habig bases its argument under Issue III on 170 IAC 1–1–10(e), stating the complainants were obligated to prove, and the PSC to find that public convenience and necessity did not require continuation of the authority excised from Habig's certificate. In view of the facts of the case, this argument is wholly without merit; IAC 170–1–1–10(e) is not applicable. To say the complainants must prove there is no longer any public need for services which were never provided is, pure sophistry. Likewise, the PSC need not make such a finding. In granting Habig's initial certificate, the PSC found that public convenience and necessity required the statewide certificate. *See* IND.CODE 8–2–7–15. However, Habig did not use its certificate to its full potential, and thus abandoned those rights not exercised. The PSC did not err in amending Habig's certificate in accordance with the dormancy condition found therein, in order to reflect Habig's actual operations under the certificate; the PSC "merely proclaimed official that which had been already rendered a nullity" by Habig's failure to fulfill the conditions of its certificate. *James A. Hannah, Inc. v. Public Service Commission of Indiana*, (1961) 132 Ind.App. 549, 566, 178 N.E.2d 561.

■ Issue IV has been waived by Habig's failure to cite any authority in support of its argument. *American Family Insurance Group v. Blake*, (1982) Ind. App., 439 N.E.2d 1170; Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). Furthermore, in its order denying Habig's motion to consolidate the sale and transfer action involving Black Beauty with the complaint action, the PSC authorized renewal of the motion at a later time; however, Habig opted to bring this appeal in lieu of further proceedings before the PSC.

■ In sum, the PSC acted in accordance with the public policy notions set out in IND.CODE 8–2–7–5. By limiting Habig's authority under its certificate of public convenience and necessity to those areas of business which it covered, the PSC insured that a purchaser of Habig's certificate would not overburden intrastate commerce or create undue competition for other trucking companies which had established a need for their services in the transportation of coal and other commodities throughout areas of Indiana other than the northeast. It is within the PSC's discretionary authority to supervise and regulate the operations of motor carriers and it possesses exclusive power to grant, deny or restrict certificates of public convenience and necessity as it sees fit. IND.CODE 8–2–7–6. If the purchaser of Habig's certificate wishes to transport coal and operate freely throughout all of Indiana, it must prove that public convenience and necessity require its proposed operations and that such will not unreasonably impair the existing public service of those common carriers presently serving the same territory. IND.CODE 8–2–7–15(b).

The decision of the Public Service Commission is affirmed.

Judgment affirmed.

ROBERTSON and RATLIFF, JJ., concur.