**TOBIN, Secretary of Labor, v. LITTLE ROCK PACKING CO. et al.**

**UNITED STATES v. LITTLE ROCK PACKING CO. et al.**

Nos. 14624, 14625.

United States Court of Appeals Eighth Circuit.

Feb. 25, 1953.

Joseph D. Mladinov and William A. Lowe, Attorneys, Department of Labor, Washington, D. C. (William S. Tyson, Solicitor, Bessie Margolin, Assistant Solicitor, Washington, D. C., and Earl Street, Regional Attorney, Dallas, Tex., on the brief), for appellant.

E. L. McHaney, Jr., Little Rock, Ark. (Owens, Ehrman & McHaney, Little Rock, Ark., on the brief), for appellees.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

RIDDICK, *Circuit Judge.*

The United States brought this action in the District Court for the Eastern District of Arkansas under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq., to secure an adjudication of civil and criminal contempt against the Little Rock Packing Company, an Arkansas corporation engaged in processing meat and meat products for commerce, Chris Finkbeiner, president of the corporation, and Otto Finkbeiner, Jr., its vice-president. The corporation and its officers were charged with willful violation of the terms of an order of injunction entered by the court in which the proceeding was instituted about ten years before trial of the present

action. The injunction permanently enjoined the corporation and its officers from employing any of its employees for a workweek longer than forty hours unless such employees received compensation for hours in excess of forty at not less than one and one-half times the regular rate at which they were employed, from employing any of its employees engaged in commerce at less than the minimum hourly wage prescribed by the Act, from transporting or offering for transportation in commerce any goods produced by the corporation unless the employees engaged in such production were compensated as required by the Act, and from failing to keep and preserve adequate records of the persons employed by it and the wages and hours and other conditions and practices of employment maintained by it as prescribed from time to time by the regulations of the Administrator pursuant to section 11(c) of the Act.

The complaint charged that since the entry of the permanent injunction the Packing Company and its officers had with knowledge of the injunction order willfully failed and refused to comply with it in any respect. The prayer of the complaint was for an order adjudging the company and its named officers guilty of criminal and civil contempt of court, for the imposition of such punishment for the alleged contempt as the court "may deem just and proper," and for judgment against the Packing Company in an amount sufficient to compensate the complainant for the cost and expenses incurred in investigating and maintaining this action, and for an order requiring the company to pay each of its employees an amount equal to the difference between the compensation actually paid and the amounts the company should have paid to each of its employees in obedience to the court's order. The defendants denied the allegations of the complaint and moved the court for an order vacating the injunction.

The action was tried before the court without a jury. In the course of the trial the United States dismissed its charges of criminal contempt against defendants Chris and Otto Finkbeiner, Jr. The court found that the payroll records of certain of the

office employees, as kept and maintained by the Packing Company, did not in all cases reflect the actual hours worked by the respective employees in a given workweek, and that in that respect the records were technically inaccurate and not in compliance with its previous injunction. On this finding it adjudged Chris and Otto Finkbeiner, Jr., and the Packing Company guilty of civil contempt and imposed a fine of $1 each upon Chris and Otto Finkbeiner, Jr., and upon the company a fine of $400 to reimburse the United States for the expense of investigating and prosecuting the case. All other issues were decided in favor of the defendants, and on their motion the previous injunction was vacated. The United States and Tobin, Secretary of Labor, have appealed from that part of the court's judgment vacating its prior injunction order and "failing to adjudge the respondents in civil contempt of Court for their failure to properly compensate their employees at not less than one and one-half times their regular rates of pay for hours worked by them in excess of 40 in the workweek." The separate notices of appeal caused the docketing of two cases in this court when in fact there is only one.

There is no dispute in the evidence. The original injunction restraining the Little Rock Packing Company from violations of the Fair Labor Standards Act of 1938 was entered September 14, 1942. For the years 1942 to 1950, inclusive, the company had in its employ a minimum of 55 employees and a maximum of 120 in December of each year, and for the same period there were employed in non-exempt clerical positions in the company's office from one to six employees. In December of 1951 there were six non-exempt clerical employees in the company's office with a weekly payroll for all of them of $310. At the same time the total of all employees of the company was 99 and the total weekly payroll was approximately $5,800.

No investigation of the company's wage and employment practices was made by the Wage and Hour Division of the Department of Labor from the issue of the injunction in 1942 until June 1951, when, as the

result of an anonymous telephone call, the investigation which resulted in this suit was instituted. The investigation disclosed that, in the opinion of the Department, throughout the period mentioned the Packing Company had fully complied with all the provisions of the Fair Labor Standards Act of 1938, as amended, with respect to all of its employees except as regards six non-exempt clerical workers in the company's office. As to these employees the court made the following finding of fact:

"The Court finds that each of the non-exempt office employees involved in this case was employed by the Packing Company at a bona fide hourly rate at all times equalling or exceeding the minimum hourly rate as provided by the Fair Labor Standards Act; that the contract of employment of each of such employees provided for compensation at an hourly rate, including time and one-half for overtime, that each of such employees was guaranteed by the Packing Company a certain number of hours of work per week and was paid for such hours at the agreed rate, including time and one-half for overtime, whether she actually worked the guaranteed number of hours or not; that each of such employees understood that she was being employed at an hourly rate of pay, as aforesaid; that each employee knew what her hourly rate of pay was, and was satisfied with the arrangement. That the guaranteed weekly wage of each employee was predicated upon an actual hourly rate of pay with time and one-half for overtime. The Court further finds that in certain cases such employees actually worked the full number of guaranteed hours; that they were always subject to being required to work the full number of guaranteed hours, and that they always worked such number of hours when it was necessary to complete the week's work. In no case did any of such employees work in excess of the guaranteed hours, nor did any employee do any work for which she was not compensated as required by the Act."

The above finding is not only supported by all of the evidence in the record, but also by the stipulation of the parties that none of the employees involved in the action worked in excess of the hours credited to her and paid for by the Packing Company. In the face of this evidence it is contended that the office employees were paid on a salary basis with no compensation for hours worked in excess of forty in any workweek; that the hourly rates of pay established by the evidence and set up upon the payroll records of the company were fictitious and bore no reasonable relation to the compensation actually received, with the result that some of the office employees in some workweeks during the period between the date of the original injunction and the institution of this action did not receive overtime as required by the original injunction and by the Act. This contention, which is directly opposed to the testimony of every witness, is based solely upon an inference drawn from the Packing Company's payroll records.

The evidence is that following the injunction of 1942 the Packing Company adopted the practice of hiring its non-exempt employees at an agreed hourly wage, at all times equal to or in excess of the minimum required by the Act. Each employee was told that the company refused to agree to compensation on a salary basis. The agreement with each employee was that she would receive the stipulated hourly wage for forty hours in each workweek with one and one-half times the agreed hourly wage for all hours worked over forty in any workweek, with a guarantee upon the part of the company that she would receive compensation on this basis for a workweek of fifty hours. Under the contract of employment the employee was required to work eight and one-half hours each day from Monday through Friday, inclusive, and seven and one-half hours on Saturday.

The evidence shows that until some time in 1944 the office employees actually worked a workweek of fifty hours and were regularly paid according to their agreement. In the operation of its business the route salesmen of the Packing Company collected

from the customers each Monday the amount owing to the Packing Company for the customers' purchases for the preceding week. Statements of these accounts were prepared in the office on Saturday of each week and the clerical employees of the office were largely engaged in their preparation. Some time in 1944 the Packing Company discontinued deliveries to customers on Saturdays with the result that the clerical employees in the office were able to finish the preparation of bills to be collected the following Monday in less time than had previously been the case. Nevertheless, the Packing Company lived up to its guarantee to pay the employees for fifty hours a week, although as a matter of practice they did not always work the full seven and one-half hours on Saturday. On the other hand, they were permitted to leave when the work of preparing Monday's bills for collection was completed. The result of this change in working conditions at the Packing Company's plant was that after 1944 the office employees, although they regularly worked the agreed number of hours from Monday through Friday, usually finished their tour of duty on Saturday in less time than they were obligated to work under their contract. The proof is that instead of working fifty hours a week as they were obligated to do if the work was available, they worked varying numbers of hours averaging from forty-six to forty-nine hours a week. The Packing Company, however, did not change its payroll records, but continued to show on each record the agreed hourly wage rate for each employee, and the contract number of hours not only from Monday through Friday but also through Saturday. As the result the payroll records maintained by the company did not in all cases, as the court found, "reflect the actual hours worked by the respective employees in a given workweek, and in this respect said records are technically inaccurate and do not comply with the injunction."

After the Fair Labor Standards Act of 1938 was amended to increase the minimum wage of employees engaged in commerce or in the production of goods for commerce to seventy-five cents an hour, the Packing Company in the case of some of its non-exempt office employees in its contracts of employment raised the hourly rate to equal or exceed the standard required by the Act and reduced the number of guaranteed hours of employment. It continued to compute the compensation of the office employees as before the change, that is to say, to pay them at the agreed hourly rate for the first forty hours in any workweek plus one and one-half times the agreed rate for all hours worked over forty in any workweek, and to pay each employee for the number of hours guaranteed whether or not actually worked. This inaccuracy in the payroll records, which, as the court found, was known to and understood by each of the employees involved, was discovered by the examiner of the Wage and Hour Division on his inspection of the company in June 1951. This investigation covered the Packing Company's wage and employment practices for a period of approximately ten years, and this inaccuracy in the payroll records of six clerical office employees was, in the opinion of the investigator, the only violation of the provisions of the Act or of the injunction of 1942 which the investigation revealed, and it is the sole basis upon which the charges in the present action are predicated. That is to say, had the office employees at all times remained on duty for the full number of guaranteed hours for which they were employed although there was nothing for them to do, or had the records shown the actual number of hours which they worked instead of the number of hours for which they were guaranteed employment, the company would have received a clean bill of health. Reduced to its simplest terms the contention of the United States is that the company has violated the injunction of 1942 and the terms of the Act and is guilty of contempt of court because it has credited its employees on its records with more overtime than they actually worked and paid them for the excess overtime according to its guarantee. This admitted fact is said to show that the agreed hourly regular wage rate is fictitious. We agree with the District Court in denying this interpretation of the contracts.

238

Nothing is to be gained by an analysis of the decisions on which the parties rely. Bay Ridge Co. v. Aaron, 334 U.S. 446, 68 S.Ct. 1186, 92 L.Ed. 1502; 149 Madison Ave. Corp. v. Asselta, 331 U.S. 199, 67 S.Ct. 1178, 91 L.Ed. 1432; Walling v. Halliburton Oil Well Cementing Co., 331 U.S. 17, 67 S.Ct. 1056, 91 L.Ed. 1312; Walling v. Harnischfeger Corp., 325 U.S. 427, 65 S.Ct. 1246, 89 L.Ed. 1711; Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705; Walling v. Helmerich & Payne, 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29; Walling v. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716; Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; McComb v. Roig, 1 Cir., 181 F.2d 726; McComb v. Pacific & Atlantic Shippers Ass'n, 7 Cir., 175 F.2d 411; McComb v. Sterling Ice & Cold Storage Co., 10 Cir., 165 F.2d 265. A reading of these cases shows very clearly that the question of the validity of guaranteed wage plans depends upon the particular facts in each case. All of them, regardless of the result on the particular facts involved, stand for the rule that the Fair Labor Standards Act imposes no inflexible form of contract on employer and employee. The test applied in each case is whether the wage rate specified in the contract of employment is fictitious or whether the stipulated rate is in fact the actual rate paid for the normal non-overtime workweek. Contracts of employment in which the stipulated hourly rate bears no relation to the compensation guaranteed by the contract are violative of the Act. Contracts in which, as in the present case, the guaranteed compensation is actually predicated upon and computed by the stipulated wage rate meet all requirements of the Act. This was true before as it is after

the amendment [1] of the Act in 1949 to recognize the validity of such contracts. The payroll records though technically inaccurate because failing to show the number of hours actually worked do not control the terms of the contracts of employment established by the evidence. See Walling v. Halliburton Oil Well Cementing Co., supra, 331 U.S. at page 22, 67 S.Ct. 1056.

The District Court did not abuse its discretion in vacating the injunction of 1942. At the time it was vacated the injunction had been in force for approximately ten years. The investigator of the Department of Labor testified that at the time of his examination in June 1951 he discussed the supposed inadequacies of the Packing Company's payroll records with the management and that every suggestion he made was immediately complied with. The trial court in pointing out in its findings of fact the inaccuracies discovered in the payroll records of six of approximately one hundred employees concluded his findings as follows: "Said records are now being properly kept and maintained." With the exception of the errors in the payroll records, pertaining as noted to only six employees, no violations of the injunction were found or even alleged after a most searching investigation of the Packing Company's wage and employment practices covering the period of nearly ten years.

The court also found that the errors in the payroll records were the result of an honest but mistaken belief on the part of the management of the Packing Company that the records as kept were in full compliance with the Act and the terms of the injunction of 1942, and that they had been corrected and would not occur in the future. These findings, without dispute in the evidence, amply sustain the court in its opinion

1. 29 U.S.C.A. § 207(e): "No employer shall be deemed to have violated subsection (a) by employing any employee for a workweek in excess of forty hours if such employee is employed pursuant to a bona fide individual contract, * * * if the duties of such employee necessitate irregular hours of work, and the contract or agreement (1) specifies a regular rate

of pay of not less than the minimum hourly rate provided in section 206(a) of this title and compensation at not less than one and one-half times such rate for all hours worked in excess of forty in any workweek, and (2) provides a weekly guaranty of pay for not more than sixty hours based on the rates so specified."

that the injunction of 1942 should be vacated. Walling v. Youngerman-Reynolds Hardwood Co., supra, 325 U.S. at page 421, 65 S.Ct. 1242; Tobin v. Alma Mills, 4 Cir., 192 F.2d 133, 136.

The judgment of the District Court is affirmed.