James P. MITCHELL, Secretary of Labor, Plaintiff,

v.

HELENA WHOLESALE, INC., Defendant.

Civ. A. No. 512.

United States District Court
E. D. Arkansas, E. D.
May 13, 1958.

Stuart Rothman, Solicitor, U. S. Dept. of Labor, Washington, D. C., Earl Street, Regional Atty., U. S. Dept. of Labor, Dallas, Tex., and Truett E. Bean, Trial Atty., U. S. Dept. of Labor, Dallas, Tex., for plaintiff-respondent.

Talley & Owen, Wayne W. Owen, Little Rock, Ark., for defendant-petitioner.

LEMLEY, District Judge.

This cause having been tried to the Court on the motion of the defendant, Helena Wholesale, Inc., to dissolve the injunction entered by this Court on October 2, 1954 under the terms of which the defendant was enjoined and restrained from violating the overtime compensation and record keeping provisions of the Fair Labor Standards Act of 1938, as amended (29 U.S.C.A. §§ 207 and 211(c), which motion is resisted by the plaintiff, and the Court having considered the pleadings in the case, the briefs of the parties, a stipulation entered into by counsel on both sides and filed in open court, the testimony produced by the defendant, and oral argument, and being well and fully advised, doth file this memorandum opinion incorporating herein its findings of fact and conclusions of law with respect to said motion.

In entering the injunction the Court found as a fact that the defendant was subject to the Act, and had been in violation thereof and should be enjoined, but further found: " * * * that while an injunction should be issued as prayed for in the complaint * * *, said injunctive decree should provide that after said injunction has remained in full force and effect for a period of one year, the defendant may apply for relief therefrom if it is convinced that it is in full compliance with the Act and believes that it is entitled to be so relieved, and upon the filing of such application the Court will, with full and ample notice to the plaintiff herein, hold a hearing thereon." And the Court concluded that an injunction should be issued in accordance with the prayer of the complaint, subject to the proviso above quoted, which proviso was incorporated into the decree.

The motion now under consideration was not filed until more than two years after the rendition of the decree, and it alleges that the defendant has been in full compliance with the Act since the injunction was issued, and prays that said injunction be dissolved; and the stipulation above referred to recites that an investigation of the defendant's business by a representative of the plaintiff, conducted in February, 1957, subsequent to the filing of the instant motion, revealed that the defendant had been substantially complying with the Act since the entry of the injunction, except that as of February, 1957 it had failed to keep any record of the number of hours worked each day and each workweek by its shop foreman, and that as of the same time many of its employees were keeping their own time records and were customarily compiling those records at the end of the

workweek, rather than concurrently with the days worked. In the course of the hearing on the motion counsel for the plaintiff candidly stated that the violations that were found to exist in February, 1957 were not sufficiently serious to have prompted the Secretary to commence an independent action in the first instance.

█ The only witness who testified at said hearing was Mr. David Stroud, the Secretary-Treasurer of the defendant company. He testified that since the injunction was issued the defendant has in good faith attempted to comply with the Act, and will continue to comply with it in the future. He further testified that up until the time of the investigation above mentioned he had believed that his company was in complete compliance with the Act, and that since said investigation time records have been kept with respect to the work of the shop foreman, and that its other employees are now required to turn in their time daily instead of weekly. Mr. Stroud impressed us with his candor while testifying, and on this phase of his testimony he was not even cross-examined. In view of this testimony, which is undisputed, we find that since the entry of the injunction the defendant has substantially complied with the Act, that the violations found by the investigator to exist in February 1957 were minor and inadvertent, and have now been corrected, and that there is no reasonable ground to believe that the defendant will not remain in compliance with the Act in the future.

In resisting the motion the plaintiff contends that notwithstanding the proviso in the Court's findings and decree, and notwithstanding the defendant's subsequent substantial compliance with the Act, said decree was a "permanent injunction," and that the Court has no power to dissolve it in the absence of a showing that to continue it in force would subject the defendant to grievous hardship and would amount to a positive wrong; and he argues that no such showing has been made, and that the motion should be denied.[1] We cannot agree.

█ In the first place, it is not disputed that under certain circumstances and upon a proper showing being made a court of equity has inherent power to vacate or dissolve an injunction previously entered by it; and if the plaintiff is correct in his argument that the instant motion can be granted only upon such a showing as would authorize the Court to vacate the decree in the exercise of its inherent power to do so, then the proviso which we were careful to insert both in our findings and conclusions and in our decree is simply surplusage. In inserting that proviso the Court certainly did not believe that it was doing a vain thing, but, on the other hand, considered that said proviso was in the nature of a condition to the relief granted. And, while counsel for the plaintiff may not have so understood at the time, it was the Court's idea that if the defendant remained in faithful compliance with the Act for a year, and then came into court and showed such a compliance, and if it appeared that there was no reasonable likelihood of future violations, the injunction would be dissolved. As stated, the present petition was not filed until more than two years had elapsed, during which time the defendant had fully complied with the Act, except for the minor and inadvertent violations that have been mentioned, which were promptly discontinued upon being brought to the defendant's attention, and has, in our estimation, manifested a sincere disposition to comply in the future.

1. In support of his contention the plaintiff relies principally upon United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999; Western Union Telegraph Co. v. International Brotherhood of Electrical Workers, 7 Cir., 133 F.2d 955; Walling v. Harnischfeger Corporation, 7 Cir., 242 F.2d 712; United States v. Radio Corporation of America, D.C. Del., 46 F.Supp. 654, and Fleming v. Miller, D.C.Minn., 47 F.Supp. 1004, reversed Walling v. Miller, 8 Cir., 138 F.2d 629, certiorari denied 321 U.S. 784, 64 S.Ct. 781, 88 L.Ed. 1076.

We have examined the decisions relied upon by the plaintiff, and heretofore cited, and we note that in none of them did the decree in question contain a proviso such as was incorporated into our decree herein,[2] and we likewise feel that those cases are distinguishable on other grounds. For example, in the Swift case, it appears that between 1920 when the decree was rendered and 1930 when the application for modification was made, the defendants had vigorously sought to attack the decree or to avoid its impact, and, still further, that there had been considerable difficulty in ferreting out and repressing the evils which had necessitated the injunction in the first instance. See 286 U.S. at page 119, 52 S.Ct. at page 464. Here, however, the plaintiff had no difficulty, as far as is shown, in discovering the defendant's original violations, and if violations occur in the future, the plaintiff is perfectly free to file a new suit. And in Fleming v. Miller, supra, the purpose of the motion to vacate was "to permit defendants to defend the proceeding on the merits," (47 F.Supp. at page 1006) which is certainly not the case here. A somewhat similar situation was presented in United States v. Radio Corporation of America, supra [46 F.Supp. 656], where the Government desired to set aside a consent decree in an anti-trust case against the will of the defendants, which relief, had it been granted, might have permitted the Government "to relitigate the issues raised in the suit or to seek relief with respect thereto additional to that given by the consent decrees."

The most recent decision cited by the plaintiff is that of the Court of Appeals for the Seventh Circuit in Walling v. Harnischfeger Corporation, supra; there, however, it was conceded by the petitioner that there had been no change of conditions, and, further, that if the

rule in the Swift & Co., supra, was applicable, the trial court had correctly denied the application for a dissolution of the injunction. Furthermore, the Court pointed out that it was reviewing the district court's denial of the application, and that such fact alone would be sufficient to distinguish the case from Tobin v. Alma Mills, 4 Cir., 192 F.2d 133, and from Tobin v. Little Rock Packing Co., 8 Cir., 202 F.2d 234. And when the decision of the district court in the Harnischfeger case (D.C.Wis., 142 F.Supp. 202) is examined, we find in the first place that no testimony was presented in connection with the application, a fact to which some importance was accorded and which is not present here; and, secondly, that the court thought that Tobin v. Alma Mills, and Tobin v. Little Rock Packing Co., both supra, did not represent the view prevailing in the Seventh Circuit.

But aside from the foregoing, we are satisfied that in the instant case this injunction has been oppressive to the defendant and has become an instrument of wrong and should be dissolved. In this connection Mr. Stroud testified that shortly after the entry of the injunction the defendant added to its business an agricultural spraying service, and a question immediately arose as to whether or not employees engaged in performing that service, or in work related thereto, were covered or not; finally, after quite a long delay the Department took the position that said employees were covered. During the delay the defendant was in a state of uncertainty as to how to compensate its employees and keep its records, and being aware of the injunction and apprehensive on account thereof, it resolved all questions in favor of coverage. Moreover, according to Mr. Stroud, the defendant has been embarrassed by the injunction and feels that it is operating under a stigma on ac-

2. The decree in the Swift & Co. case, supra, contained a general reservation of jurisdiction for the purpose of taking such other action or the granting of such other relief "as may become necessary or appropriate for the carrying out and en- forcement" thereof "and for the purpose of entertaining at any time hereafter any application which the parties may make" with reference thereto. See 286 U.S. at pages 111–112, 52 S.Ct. at page 461.

count thereof. In addition to that, the defendant in the future may well be confronted with other questions bearing upon its payroll, employment and record keeping practices, and may well encounter the same difficulty in getting a definite ruling from the Division as it has encountered in the past.

While the delay of the Division in expressing an opinion as to whether or not given employees are covered by the Act, or whether or not a given practice is legal or illegal may be understandable, still it bears hard on an employer who is laboring under an injunction restraining him from violating the Act since he must decide at his peril what his obligations are, and if his decision is wrong, he is subject not only to civil contempt proceedings but to a charge of criminal contempt as well.

While the plaintiff insists that the injunction here does not require the defendant to do anything that it has a legal right not to do, or to refrain from exercising any legal right that it possesses, we feel that such statement is an oversimplification. It is, of course, true that all employers subject to the Act are required to comply with its terms, still it is unrealistic to say that an enjoined employer is in the same situation as one who is not enjoined. Not only does the former labor under the stigma and embarrassment of having been found to be in violation of the law and subject to injunction, which stigma and embarrassment may have injurious effects in and of themselves, but also he is subject to contempt proceedings, conviction in which entails more serious stigma and more severe consequences than the injunction itself. And out of fear of such proceedings the enjoined employer may well feel impelled to sacrifice his own views and interests to those of the Government, if he can ever discover what they are, and pending that discovery he may well be forced, out of an abundance of caution, to resolve all questions against his own interests, as the defendant did in this case and as employers so situated generally do.

Reference has heretofore been made to the decision of the Court of Appeals for this Circuit in the Little Rock Packing Company case, which decision was an affirmance of our own action in dissolving an injunction issued by us nearly ten years before. In determining that the injunction in that case should be dissolved we found that since its entry in 1942 the defendant and its officials had been keenly aware of the requirements of the Act, had conscientiously endeavored to comply with its terms, and that the only violations committed in the interim had been trivial, and we were satisfied that there was no reason to believe that future violations would occur, and we further found that to continue the injunction in force would be unjust and inequitable as well as oppressive. United States v. Little Rock Packing Co., D.C. Ark., 104 F.Supp. 527.

When the situation in the instant case is compared with that presented in the Little Rock Packing Company case, we feel that in certain respects the defendant here is, if anything, more deserving of relief than was the packing company. In the first place, while the decree with which we are now concerned was not, at least in terms, a consent decree, nevertheless it was that in effect, whereas the decree in the Little Rock Packing Company case was rendered in the face of determined opposition and after a hotly contested trial. Secondly, when the investigator for the Wage and Hour Division discovered a violation by the packing company of the record keeping provisions of the Act, that company took the position that its method of keeping records was not illegal, and insisted upon that position throughout the contempt proceedings brought by the Secretary of Labor, and was found to have been in civil contempt, and a compensatory fine was assessed against it. Here, however, as soon as the investigator called the defendant's attention to the violations that have been mentioned, the latter ceased and desisted therefrom and was in full compliance with the Act at the time of the hearing.

The only purpose of the injunction in this case was to insure future compliance with the Act; such compliance has been obtained, and, as stated, we are satisfied that there is no reason to believe that future violations will recur. Hence, the injunction has served its purpose, and under the circumstances here present, should be dissolved; and it will be so ordered.