Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor

v.

ED'S SHOPWORTH SUPERMARKET, INC.

Civ. A. No. 8738.

United States District Court
W. D. Louisiana,
Shreveport Division.

March 5, 1963.

Charles Donahue, U. S. Dept. of Labor, Washington, D. C., Earl Street, and Truett E. Bean, Dallas, Tex., for plaintiff.

James B. Wells, Bossier City, La., for defendant.

BEN C. DAWKINS, Jr., Chief Judge.

The Secretary of Labor brings this suit to enjoin defendant from violating certain provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. Plaintiff contends that defendant has paid certain employees at wages less than $1.00 per hour as required by Sections 6 and 15(a)(2) of the Act and that defendant has also failed to maintain certain records in accordance with Section 11(c) and 15(a)(5) of the Act.

All essential facts have been stipulated, and the matter has been submitted for decision on its merits.

Defendant's grocery establishment (two large retail stores) has had an annual volume in excess of $1,000,000 for the three different twelve-month periods ending prior to July 1, 1961, October 1, 1961, and January 1, 1962, but received less than $250,000 in annual volume in each of the three periods in direct shipments from suppliers located outside the State. Defendant received, however, from Salley Grocery Company, Inc., a Louisiana concern, goods valued greatly in excess of $250,000 which had traveled in interstate commerce.

Defendant contends that it is not subject to the Act, within the meaning of Section 3(s)(1), 29 U.S.C. § 203(s) (1),[1] as amended in 1961, which requires that "such enterprise purchases or receives goods for resale that move or *have moved* across State lines (*not in deliveries from the reselling establishment*) which amount in total annual volume to $250,000 or more." (Emphasis added.) It argues that the goods received from Salley are deliveries from a reselling establishment and are not to be considered in determining if the minimum of $250,000 of goods which have traveled in interstate commerce has been met.

Senate Report 145 of the 87th Congress stated:

"It will be noted that the application of the test relating to purchases and receipts of goods for resale, where such goods move or *have moved* across State lines, is not based on any interstate movement of such goods from the reselling establishment in its deliveries to customers. The interstate movement referred to is, rather that movement by which such goods have been made available for sales of the reselling establishment, as where a retail enterprise located in one State purchases or receives goods for resale to its customers and these goods move or *have moved* in commerce from other States." (Emphasis added.)[2]

Contained in the same Senate Report was the additional explanation of the test to be used in determining if an establishment meets the economic test:

"* * * Even if engaged in commerce, a retail or service enterprise would be covered only if it has purchased or received goods for resale that move or have moved across State lines which amount in total an-

1. "(s) 'Enterprise engaged in commerce or in the production of goods for commerce' means any of the following in the activities of which employees are so engaged, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person:

"(1) any such enterprise which has one or more retail or service establishments if the annual gross volume of sales of such enterprise is not less

than $1,000,000, exclusive of excise taxes at the retail level which are separately stated and if such enterprise purchases or receives goods for resale that move or have moved across State lines (not in deliveries from the reselling establishment) which amount in total annual volume to $250,000 or more; * * *."

2. 1961 U.S.Code Congressional and Administrative News, 1620, at 1663.

nual volume to $250,000 or more. This provision on inflow volume applies to employees employed by retail or service enterprises (who are in the final stages of the flow of interstate commerce from the producer or manufacturer to the ultimate consumer) a principle essentially the same as that embodied in the phrase 'production for commerce' as applied to employees of manufacturing concerns (who are the initial stage of the flow of interstate commerce). Under the inflow limitation on coverage contained in the committee bill, goods amounting to $250,000 a year must be purchased or received for resale and *have moved* across State lines at some stage in the flow of commerce to the retailer.

"In sum, coverage under the act at the present time is based on engagement in commerce or in the production of goods for commerce. In view of the specific exemption for retail and service establishments, however, the courts have not fully explored the actual bounds of this concept as applied in these fields. Under the bill the specific exemption for retail and service establishments is substantially reduced although it still excludes firms and establishments doing less than specific volumes of business, and still excludes enterprises that do not purchase or receive goods for resale which move or *have moved* across State lines amounting in total volume to $250,000 or more." Emphasis added.) [3]

Thus, the economic test provided by Congress is the purchase or receipt by an enterprise of goods that move or *have moved* across State lines. Excluded from the test are goods sold by this same establishment that are delivered across State lines. Applied to this defendant, this would mean that in determining if it met the test, no consideration would be given to any goods sold and delivered by defendant in another State. It was not intended by the Act to exclude goods that *had been* in interstate commerce but which were purchased and delivered to defendant by Salley Grocery.

More or less as an aside, defendant argues in one portion of its brief, no such contention being made in its pleadings, that if the legislation is found to be without the scope of authority of Congress, no legislative purpose or history can bring such legislation into effect in the face of judicial limitations which have been placed upon the commerce clause of the Constitution. It does not ask that a three-judge court be convened to enjoin enforcement of the statute, as required by 28 U.S.C. § 2282, whenever the constitutionality of a federal statute is brought into question.

Insofar as the constitutional questions are concerned, a statute enacted by Congress is presumed to be constitutional, and he who attacks it has the burden of proving its unconstitutionality. Kewanee Oil & Gas Co. v. Mosshamer, 58 F.2d 711 (C.A.10, 1932); Mount Tivy Winery v. Lewis, 42 F.Supp. 636 (N.D.Calif., 1942). See also U.S. Code Congressional and Administrative News, 1961, p. 1645 et seq.[4] Defendant

3. Id. at 1645.

4. "According to Bureau of Census reports, in 1958 there were 1.8 million retail establishments in our country. Since the bill covers only about 25,600 retail enterprises with 65,000 establishments, it is abundantly clear that the bill's extension of coverage is limited to a relatively small portion of the Nation's total number of retail establishments.
"There has been an intimate relationship between the development of retail trade and the growth of the economy

as a whole. The structure of the retail industry has undergone major modifications as the economy has developed into a highly specialized and integrated urban economy. *While there remains a large number of small retail stores which are local in the traditional sense of the term, retailing today is no longer essentially local in nature. It has become a vital and indeed indispensable part of the interstate stream of commerce through which flows the huge volume of consumer goods produced, shipped,*

has failed to do this, and cites no authorities in support of its position.

· For the reasons given, there will be judgment for plaintiff as prayed. A proper decree should be presented on notice.

*and distributed to meet the individual and family demands of our Nation's population. The efficiency with which the country's retail enterprises perform their function of getting these goods to consumers directly affects the vitality and growth of these segments of American industry which produce, handle, and transport through the arteries of interstate commerce from every corner of the land the commodities which supply our citizens in all the 50 States.* (Emphasis added.)

\*   \*   \*   \*   \*

"Ample provision is made in the bill to insure that the original intent of the sponsors of the act to exclude the small local retail merchants such as the corner grocer, neighborhood drugstore, barbershop or beauty parlor is carried out. Not only must the enterprise have $1 million in sales annually but, as noted elsewhere in the report, there are other tests to insure that the covered enterprises will be substantially engaged in interstate commerce."