W. Willard WIRTZ, Secretary of Labor,
United States Department of Labor,
Plaintiff,

v.

EDISTO FARMS DAIRY, a Corporation,
Edisto Dairies, a Corporation, Edisto
Fleets, Inc., a Corporation, and Robert
P. Kapp, Defendants.

Civ. A. No. AC–1116.

United States District Court
E. D. South Carolina,
Columbia Division.

May 26, 1965.

Charles Donahue, Sol., Beverley R. Worrell, Reg. Atty., Reuben S. Haslam, United States Dept. of Labor, for plaintiff.

N. Heyward Clarkson, Jr., Columbia, S. C., for defendants.

SIMONS, District Judge.

This action was brought by the Secretary of Labor to enjoin defendants from violating the provisions of Section 15 [a] [2] and 15 [a] [5] of the Fair Labor Standards Act, as amended, [29 U.S.C.A. § 201 et seq.], hereinafter referred to as the Act. Section 15 [a] [2] declares unlawful a violation of the minimum wage or overtime provisions of the Act, [29 U.S.C.A. §§ 206 and 207], and Section 15 [a] [5] declares unlawful a violation of the record-keeping provisions of the Act [29 U.S.C.A. § 211 [c]]. Jurisdiction of the court is conferred by Section 17 of the Act.

The complaint essentially alleges that defendants have violated the provisions of Section 15 [a] [2] and 15 [a] [5] with respect to employees who are, and have been, covered under the Act as follows: [1] By being employed in an "[e]nterprise engaged in commerce or in the production of goods for commerce" within the meaning of Sections 3 [r] [1] and 3 [s] [3] [2] of the Act, [29 U.S.C.A. § 203 [r] and 203 [s] [3]]; or [2] By being individually engaged in interstate commerce as a result of regular activities in ordering, receiving, handling or otherwise working on goods such as containers, orange juice and cottage cheese,

1. Section 3[r] provides, in part: "'Enterprise' means the related activities performed [either through unified operation or common control] by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, * * *."

2. Section 3[s] [3] provides: "'Enterprise engaged in commerce or in the production of goods for commerce' means any of the following in the activities of which employees are so engaged, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person: * * * [3] any establishment of any such enterprise, except establishments and enterprises referred to in other paragraphs of this subsection, which has employees engaged in commerce or in the production of goods for commerce if the annual gross volume of sales of such enterprise is not less than $1,000,000; * * *."

moving in commerce from points outside the state of South Carolina.

Defendants are engaged in the business of purchasing, producing and distributing dairy products, orange juice, and cottage cheese. Defendant Edisto Farms Dairy is a South Carolina Corporation which has its principal office and place of business in Columbia, with branch offices in various locations throughout the state. Defendant Edisto Dairies was incorporated to protect the Edisto name and does not conduct business in its own name. Defendant Edisto Fleets, Inc., is owned by Edisto Farms Dairy, and leases, operates and maintains trucks and vehicles used by Edisto Farms Dairy in its operation. Defendant Robert P. Kapp owns 50% of the stock of Edisto Farms Dairy and Edisto Dairy, and is the chief executive officer of each of the defendant corporations.[3] As such he has directed the corporate activities and has established pay policies and hourly schedules of employees.

Plaintiff contends that an investigation of defendants' operation by the Wage and Hour and Public Contracts Division of the Department of Labor conducted in January, 1962, conclusively showed that defendants employed retail route helpers at subminimum wages without recording hours worked, employed office employees without paying lawful overtime compensation and recording hours actually worked, and applied a quota system of hours respecting wholesale route helpers which did not credit them with actual hours worked, all in violation of applicable provisions of the Act. They further contend that defendants constitute an "enterprise" engaged in commerce within the meaning of Sections 3 [r] and 3 [s] [3] of the Act, and that, therefore, all of their employees have been covered by the Act since September 3, 1961, effective date of the above sections. Plaintiff also contends that, notwithstanding the enactment of Sections 3 [r] and 3 [s] [3], all of defendants' individual employees engaged in ordering, receiving, handling or otherwise working on goods such as containers, orange juice and cottage cheese, moving in commerce from points outside the state of South Carolina have been at all times prior and subsequent to September 3, 1961, engaged in interstate commerce and covered by the Act.

Defendants allege that Sections 3 [r] and 3 [s] [3] are unconstitutional and ineffective, and therefore defendants have never been lawfully subject to said provisions; that prior to the enactment of said provisions of the Act they were keeping all of the records and paying all wages required by the Act, as to those of its employees engaged in interstate commerce and not in an exempt status; and that only those employees engaged in ordering and handling cottage cheese and orange juice before these products "come to rest" in defendants' warehouse, are at the present time or ever have been engaged in interstate commerce and covered by the provisions of the Act. They further allege that the retail route helpers are exempt from the provisions of the Act, in any event, as outside salesmen, pursuant to Section 541.5 of the Code of Federal Regulations of the Department of Labor, [29 C.F.R. 541.5].

In order to determine whether defendants have violated the provisions of the Act, the following issues must be considered: [1] Are the 1961 amendments to the Act, which include Sections 3 [r] and 3 [s] [3], constitutional? [2] Do defendants constitute an "enterprise" under the said sections? [3] Do cottage cheese and orange juice "come to rest" in defendants' warehouse, so as to remove these products from interstate commerce? [4] Are defendants' retail route helpers exempt from provisions of the Act as "outside salesmen"? [5] Have defendants violated the monetary and record-keeping provisions of the

---

**3.** 50% of outstanding stock of Edisto Farms Dairy is owned by J. B. Guess, Jr., T. Connor Guess and J. B. Guess, III; 50% of stock of Edisto Dairies is owned by J. B. Guess, Jr. See defendants' answers to plaintiff's interrogatories Nos. 1–8, filed August 24, 1963.

Act? [6] If defendants are found to have been in violation of the Act in one or more particulars as asserted by plaintiff, should the court, under all the circumstances here presented, issue its injunction restraining defendants from future violations of the Act?

I

Are the 1961 amendments to the Act constitutional?

■ Defendants allege that the enactment of Section 3 [s] [3] [4] of the Act is an attempt by Congress to determine and establish what is interstate commerce by definition which it does not have the power to do. However, this court is unable to agree that said statute has this effect. The wording of the statute does not infer, as plaintiff maintains, that if an enterprise has some employees actually engaged in interstate commerce, then all employees are so engaged. Rather the statute provides *that an enterprise is engaged in interstate commerce,* if it has any persons handling, selling, or otherwise working on goods that have been moved in or produced for interstate commerce. The Congress was careful to retain the existing criteria of whether employees have "engaged in commerce" or "production of goods for commerce" as the test to determine whether an enterprise is subject to the Act. The basic test remains the actual type commerce engaged in by employees.

Although the concept of an "enterprise" engaged in commerce or in the production of goods for commerce is novel, the courts have consistently held that the Fair Labor Standards Act must be liberally construed and have far reaching application in order to effectively carry out the intent of Congress in enacting the legislation. In the early case of United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, [1941], contesting the constitutionality of the Act, the United States Supreme Court said at 121, 61 S.Ct. at 460:

"Congress, having by the present Act [Fair Labor Standards Act] adopted the policy of excluding from interstate commerce all goods produced for the commerce which do not conform to the specified labor standards, it may choose the means reasonably adapted to the attainment of the permitted end, even though they involve control of intrastate activities. Such legislation has often been sustained with respect to powers, other than the commerce power granted to the national government, when the means chosen, although not themselves within the granted power, were nevertheless deemed appropriate aids to the accomplishment of some purpose within an admitted power of the national government."

However, in considering the fact that section 3 [s] [3] sets no standard for the number of employees who must be engaged in interstate commerce before an enterprise is deemed to engage in interstate commerce, it appears that the statute does go far towards invading the field of intrastate commerce where the provisions of the Act should not be effective. Indeed, legislative history of the amendments reflects that some members of Congress had serious doubts as to its constitutionality on grounds that it would afford coverage to some employees not connected in any way with interstate commerce.[5]

■ However, a statute is presumed to be constitutional and this presumption will prevail unless there is a "clear showing that it transgresses constitutional limitations." National Mut. Insurance Co. of Dist. of Col. v. Tidewater Transfer Co., 337 U.S. 582, 604, 69 S.Ct. 1173, 1183, 93 L.Ed. 1556 [1949].

■ It has long been established that one who attacks the constitutional-

---

4. Note 2, supra.

5. See U.S.Code Congressional and Administrative News, 1961, Volume 2, pp. 1689–1694.

ity of a statute assumes the burden of proving its unconstitutionality. Metropolitan Casualty Ins. Co. of New York v. Brownell, 294 U.S. 580, 55 S.Ct. 538, 79 L.Ed. 1070 [1935]; Queenside Hills Realty Co. v. Saxl, 328 U.S. 80, 66 S.Ct. 850, 90 L.Ed. 1096 [1946].[6] In Brownell the court said, 294 U.S. at 584, 55 S.Ct. at 540:

> "It is a salutary principle of judicial decision, long emphasized and followed by this Court, that the burden of establishing the unconstitutionality of a statute rests on him who assails it, and that courts may not declare a legislative discrimination invalid unless, viewed in the light of facts made known or generally assumed, it is of such a character as to preclude the assumption that the classification rests upon some rational basis within the knowledge and experience of the legislators."

In Goldberg v. Ed's Shopworth Supermarket, 214 F.Supp. 783, [D.C.La.1963], defendant contended that the enterprise provisions of the Fair Labor Standards Act were unconstitutional. The court there held that defendant had failed to cite any authority in support of his position, and had failed to sustain the necessary burden of proof. Defendants here have also failed to sustain this burden, and I conclude Sections 3 [r] and 3 [s] [3] of the Act are constitutional and binding upon defendants at all times subsequent to September 3, 1961, the date on which they became effective provisions of the Act.

## II

Do defendants constitute an enterprise under Sections 3 [r] and 3 [s] [3] of the Act?

Edisto Farms Dairy has operated a dairy business in South Carolina with headquarters in Columbia, and branch offices in various other cities around the state for a number of years. Its business consists principally of purchasing and processing milk and milk products, which it retails and distributes wholesale. All of its sales are within the state, however, approximately 2% of its products, consisting of orange juice and cottage cheese, are purchased from outside the state of South Carolina for resale to defendants' customers within the State. Packaging materials such as containers and caps are also purchased by defendants from out-of-state sources. Defendant Robert P. Kapp is chief executive officer for all defendant corporations, and all the corporations exist for the sole purpose of distributing dairy products under the Edisto Farms Dairy brand name. They operate "through unified operation of common control for a common business purpose." Their gross income exceeds $3,000,000 per year, and they admittedly have some employees handling goods that move in interstate commerce.

Defendants contend that the orange juice and cottage cheese, admittedly shipped in interstate commerce, are incidental products constituting not more than 2% of defendants' sales; that these products are not a substantial enough part of defendants' dairy business for this court to find that defendants are engaged in interstate commerce. However, coverage under the Act is not determined by the amount of interstate commerce engaged in by a business. This defense of *de minimis* was explicitly held inapplicable to the Fair Labor Standards Act by the United States Supreme Court in Mabee v. White Plains Publishing Co., 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607. There the Act was held to apply although only about ½ of 1% of a newspaper's business was regularly out-of-state. The Court said at 327 U.S. 181, 182, 66 S.Ct. 512:

> "Here, Congress has made no distinction on the basis of volume of business. By § 15 [a] [1] 29 U.S. C.A. § 215 [a] [1] it has made unlawful the shipment in commerce of '*any* goods in the production of

---

6. See also Kewanee Oil and Gas Co. v. Mosshamer, 58 F.2d 711, [10th Cir. 1932].

which *any* employee was employed in violation of" the overtime and minimum wage requirements of the Act. Though we assume that sporadic or occasional shipments of insubstantial amounts of goods were not intended to be included in that prohibition, there is no warrant for assuming that regular shipments in commerce are to be included or excluded dependent on their size."

In Wirtz v. G & W Packing Company, 324 F.2d 802, [1963], the Fourth Circuit Court of Appeals applied the Mabee rule where revenue from sales in interstate commerce was only 2% of the total sales of a business. The court said at 324 F.2d 803:

"The sales and shipments of hides and offal were not sporadic and occasional, but a regular part of the business. It is immaterial that those items represented only a small portion of G & W's total sales."

■■ I find that defendants do constitute an enterprise engaged in interstate commerce within the meaning of section 3 [s] [3], and that consequently all of its employees have been subject to the provisions of the Act since the 1961 amendments became effective on September 3, 1961. I further find that all of the named corporate defendants together constitute the "enterprise" and are proper parties defendant and that defendant Robert P. Kapp as chief executive officer of the corporate defendants is a proper defendant in the suit.

### III

■ Do cottage cheese and orange juice "come to rest" in defendants' warehouse so as to remove them from all vestiges of interstate commerce?

Plaintiff contends that prior to the effective date of the "enterprise" provisions of the Act on September 3, 1961, defendants were in violation of the provisions of the Act relating to record keeping and wages as to those of its employees handling orange juice and cottage cheese, after these products were removed from defendants' warehouse to be delivered to customers. Defendants assert that these products had "come to rest" in the warehouse, so as to remove them from all vestiges of interstate commerce thereafter within the holding of the United States Supreme Court in Walling v. Jacksonville Paper Company, 317 U.S. 564, 63 S.Ct. 322, 87 L.Ed. 460 [1943]. Defendants then contend that defendants' employees who handle these products after they leave the warehouse were never engaged in interstate commerce before passage of the "enterprise" amendments to the Act.

Suffice it to say for purposes of this suit, it is unnecessary to decide this issue, in view of my upholding of the constitutionality of the enterprise amendments, which extended the coverage of the Act to all employees of defendants subsequent to September 3, 1961; and the theory that storage of products in a company warehouse has taken them out of interstate commerce has been frequently litigated without any precise guidelines having been formulated, and with each case having been decided principally on its own factual circumstances. Therefore, any violation of the Act by defendants prior to the 1961 amendments, based solely on the theory that certain products had not "come to rest" in defendants' warehouse, standing alone would not in my opinion warrant the issuance of an injunction, especially in view of the uncertainty of the law in this regard, and the reasonableness of defendants' interpretation thereof.

### IV

Are the retail route helpers exempt from provisions of the Act "as outside salesmen"?

The retail route helpers [7] are employed by defendants to assist the driver of each route truck in making deliveries and taking orders for defendants' dairy products.

---

7. Designated by defendants as "junior salesmen".

Defendants maintain that the route helpers are "junior salesmen", and as such are specifically exempted from coverage of the Act as outside salesmen under 29 U.S.C.A. § 213[a] [1].[8]

Regulations of the Department of Labor, 29 CFR, Part 541.5 provide:

"The term 'employee employed * * in the capacity of outside salesman' in section 13 [a] [1] of the act shall mean any employee:

"[a] Who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business in:

"[1] Making sales within the meaning of section 3 [k] of the act, or

"[2] Obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

"[b] Whose hours of work of a nature other than that described in paragraphs [a] [1] or [a] [2] of this section do not exceed 20 percent of the hours worked in the workweek by nonexempt employees of the employer: *Provided,* That work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work."

Section 3 [k] of the Act defines "sale" or "sell" as follows:

" 'Sale' or 'sell' includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition."

■ It is apparent from the evidence in the instant case that the retail route helpers are not exempt from coverage of the Act as "outside salesmen". The driver of the truck exercises full control over the route and selling operations. Testimony of defendants' witnesses indicates that as a general rule each truck makes approximately 700 stops, where 60% of the customers have regular orders and sales are attempted to be made to only 30% of the customers. The "sale" usually consists of knocking on customer's door and taking orders for dairy products, orange juice and cottage cheese. Approximately 60% of the helper's time consists of delivering standing orders.

Defendant cites recent case of Wirtz v. Charleston Coca-Cola Bottling Company, Inc., et al., 237 F.Supp. 857, [E.D. S.C.1965], in which it was held that junior salesmen helpers on coca-cola trucks were "outside salesmen" and exempt from coverage of the Act. However, in that case the court found that the junior salesmen were trained in sales techniques, attended sales meetings, were paid a guaranteed salary plus a commission on all sales, that the sales of the driver and of the helpers were joint sales, and that the non-exempt activities of the helpers did not exceed 20% of the normal work week of non-exempt employees.

Evidence in this case clearly shows that route helpers do not attend sales meetings, are paid a basic wage of $35.00 per week, or 3% of the total monthly sales if the basic wage is less than 3% of the total sales, and that 60% of the helper's time is devoted to making daily routine deliveries. Furthermore, even if the sales here be considered joint sales on part of driver and helper, selling activities still would only comprise approximately 40% of the work day. The record is also inconclusive as to any formal sales training afforded the route helpers other than on-the-job training.

■ It is well settled that in establishing the exemption of its employees under Section 213 of Title 29, an employer asserting such exemption has the bur-

---

8. Section 213[a] [1] provides, in part, that minimum wage and overtime provisions of the Act do not apply to outside salesmen as defined and delineated by regulations of the Secretary of Labor.

den of proving "plainly and unmistakenly" that its employees are exempt; and the provisions of the exemption statute are to be narrowly construed against the exemption. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed. 2d 393 [1960]; Walling v. General Industries Co., 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088 [1947]; A. H. Phillips, Inc., v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095 [1945]; Pugh v. Lindsay, 206 F.2d 43, [4th Cir. 1953]; and many other cases too numerous to cite.[9] Under the facts before me, I cannot conclude that defendants have carried their requisite burden of proof to establish the exemption from the Act of their route helpers, termed by them as "junior salesmen."

At the beginning of the trial, defendants stated that they were paying minimum wages to these helpers in accord with the Act, and are at the present time in compliance insofar as these employees are concerned.

## V

Have defendants violated the monetary and record-keeping provisions of the Act?

■ Having determined that the "enterprise" provisions of the 1961 amendments to the Act are constitutional, and that the defendants constitute an enterprise engaged in interstate commerce, it follows that coverage of the Act extends to all employees of defendant corporations, except those employees specifically exempt by applicable provisions of the Act. From all the evidence presented, I find that subsequent to September 3, 1961 and prior to date of the trial, defendants violated Sections 15 [a] 2 and 15 [a] 5 of the Act as follows:

a. Defendants failed to accurately record number of hours worked by some of their wholesale route helpers, and in at least one instance failed to pay employee for hours worked over the allotted hours.

b. Defendants failed to pay minimum wages in accordance with the Act to some of their wholesale route helpers and retail route helpers.

c. Defendants failed to record the number of hours worked by their retail route helpers.

d. Defendants failed to pay some of their office employees, and shipping and receiving employees overtime compensation for hours worked in excess of 40, 42 or 44 hours per week in accordance with the Act, and failed to record the number of hours actually worked by these employees.

■ At the trial defendants asserted that orders were given to the drivers of the wholesale route trucks that no wholesale route helper was to work in excess of forty hours per week, and that any excess time worked by such helper would be paid by the driver himself. This action constitutes no defense, as the Act places the responsibility upon the employer to accurately record the number of hours worked by each employee and pay wages to each employee based upon the actual hours worked.

■ As to the above violations concerning overtime wages to shipping and receiving employees and office workers, defendants claimed that they were paid semi-monthly salaries, which were more than the minimum wage and one and one-half times the minimum for hours worked over 40 per week. That such payments are not in compliance with the Act has long been established. The Fourth Circuit Court of Appeals in McComb v. Norris, 177 F.2d 357 [1949], stated at 359:

"The court below was in error in its conclusion that for overtime the Act required Norris to pay merely one and one-half the minimum wage prescribed by the Act. On the contrary, the Act requires the employer to pay for overtime one and one-

9. See Note 71 to said Section 213, as amended.

half the regular wage of the employee, when this regular wage exceeds the minimum prescribed by the Act. We made this quite clear in Missel v. Overnight Motor Transportation Co., 4 Cir., 126 F.2d 98, affirmed Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682. Said Mr. Justice Reed, in his opinion in this case, 316 U.S. at page 577, 62 S.Ct. at page 1220: 'The provision of section 7 [a] [of the Act] requiring this extra pay for overtime is clear and unambiguous. It calls for 150% of the regular, not the minimum wage.' "

Defendants' remaining defense to the above violations was that the 1961 amendments were unconstitutional and the Act, therefore, only applied to certain categories of employees actually engaged in handling items shipped in interstate commerce. As discussed hereinabove the court has found that the enterprise amendments to the Act are constitutional; that defendants constitute an "enterprise" engaged in interstate commerce and, that, therefore, all of their employees have been covered by the Act since September 3, 1961.

### VI

 The final question for determination is whether, under all the facts and circumstances of this case, the court should issue its injunction restraining defendants from future violations of the Act. In making this determination the court is fully aware of the role that the judiciary must play in enforcing the provisions of the Act. The court is equally well aware that every violation of the Act does not necessarily require the issuance of an injunction, inasmuch as an injunction is a drastic remedy which

should not be invoked as a punitive measure, but only to insure future compliance with the Act. As was succinctly stated by the Fourth Circuit in Walling v. Clinchfield Coal Corporation, 159 F.2d 395, 399 [1946]:

"There can be no question but that the usual equity rules applicable to injunctions are to be regarded in considering an application for that remedy under the Act [Fair Labor Standards Act]. Fleming v. Phipps, D.C., 35 F.Supp. 627. For as was said in Walling v. Associated Truck Lines, D.C., 57 F.Supp. 943, 945: 'The rule is well settled that the extraordinary writ of injunction will not issue for the purpose of punishing past offenses, but *will issue only in those cases where the court is convinced that such relief is necessary to prevent future violations.'* "[10] [Emphasis added].

In United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 [1953], the Supreme Court discussed the basic considerations in determining whether to grant injunctive relief.[11] The Court said at 633, 73 S.Ct. at 898:

"The purpose of an injunction is to prevent future violations, Swift & Co. v. United States, 1928, 276 U.S. 311, 326 [48 S.Ct. 311, 72 L.Ed. 582] and, of course, it can be utilized even without a showing of past wrongs. But the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. The chancellor's decision is based on all the circumstances; his discretion is necessari-

---

10. See also Mitchell v. Lublin, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243 [1959]; Buckley v. Wirtz, 326 F.2d 838 [10th Cir., 1964]; Wirtz v. G & W Packing Company, 324 F.2d 802 [4th Cir.1963]; Mitchell v. Bland, 241 F.2d 808 [5th Cir. 1957]; Mitchell v. Hodges Construction Co., 238 F.2d 380 [5th Cir. 1956].

11. Although this case involved a violation of the provisions of the Clayton Act, the reasoning of the opinion is applicable to the issues presented herein in connection with question of issuing of injunctive relief.

ly broad and a strong showing of abuse must be made to reverse it. To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations."

The Court in above case affirmed refusal of the district judge to enjoin defendants therein although the government showed that:

"Hancock's three interlocking directorates viewed as three distinct violations, his failure to terminate them until after suit was filed despite five years of administrative attempts to persuade him of their illegality, his express refusal to concede that the interlocks in question were illegal under the statute and his failure to promise not to commit similar violations in the future."

In the case at bar defendants have violated the record-keeping and wage provisions of the Act since September 3, 1961. This court certainly does not look with favor upon defendants' failure to comply with the provisions of the Act until the beginning of the trial.

However, in view of the fact that the constitutionality of the enterprise amendments has only been raised in one district court case, Goldberg v. Ed's Shopworth Supermarket, Inc., supra, and has not been passed upon by the Supreme Court or any of the other appellate courts, I surely am unable to say that defendants were unreasonable or unjustified in their disputing or contesting coverage of the Act, as to those of its employees who were not directly engaged in handling products moving in interstate commerce. Neither am I able to criticize defendants unduly in their questioning the coverage of the Act, as to the retail route helpers, both before and after the 1961 amendments, as I must concede that there is ample ground for an honest difference of opinion under the provisions of the Act as construed by the Secretary and the factual circumstances of this case. The plaintiff has failed to convince the court that defendants have acted at any time in bad faith, or in such a wilful manner as to warrant the application of drastic sanctions against them.

During trial defendants offered a proposal for stipulation and declaration [12]

12. Defendants' Exhibit D–2: "The corporate defendants proposed to stipulate and state in Open Court that they have heretofore complied with all provisions of the Fair Labor Standard Act, particularly the provisions for minimum wages, overtime and record keeping as they have understood and been advised that said Act applied to them and their employees; that commencing with Monday, November, 30, 1964 they will pay a minimum wage of $1.15 or $1.25 per hour overtime, as may be applicable, to its employees, and otherwise comply with Sec. 15[a] [2] and Sec. 15[a] [5] of said Act as presently written so long as said Act and provisions thereof remain valid; that employees of the defendants shall be exempt from or subject to overtime and hourly wage rates as provided by said Act as follows:

| | |
|---|---|
| Outside Salesmen and Executives | Fully Exempt |
| Drivers, Mechanics, helpers [Junior salesmen] | |
| Loaders—Minimum wage | $1.25 per hour—No overtime |
| First Processors, Milk Tank drivers and helpers— Minimum wage | $1.15 per hour—No overtime |
| All other employees—Minimum wage of $1.25 per hour—Overtime after 40 hours | |
| Employees of retail stores with sales of less than $250,000.00 per year | Fully Exempt |

"That they do not admit their actions or omissions, if any, prior to November 30, 1964 were in violation of any provisions of the Fair Labor Standard Act and do not waive their right to defend all such action or omission, if any, occurring prior to Monday, November 30, 1964."

substantially stating that they had heretofore complied with the Act insofar as it applied to their employees engaged in interstate commerce, but commencing Monday, November 30, 1964, that the corporate defendants would fully comply with sections 15 [a] [2] and 15 [a] [5] of the Act so long as said provisions lawfully apply to all of their employees.

In reply [13] to defendants' offer to stipulate, plaintiff substantially agreed with defendants' interpretation of the wage provisions of the Act, except that defendants' milk tank drivers and helpers would be entitled to a minimum wage of $1.25 per hour after September 3, 1965.

In accordance with defendants' stipulation a Resolution was adopted by the officers and directors of Edisto Farms Dairy, Edisto Dairy, and Edisto Fleets, Inc., R. P. Kapp, James B. Guess, III, T. Connor Guess and James B. Guess, in which said directors resolved that commencing November 30, 1964, the corporate and individual defendants would in fact comply with the provisions of the Act as set out in defendants' Proposal for Stipulation and Declaration discussed above.[14]

Although defendants in this case have reluctantly agreed to comply with the Act because of their strong feeling that the enterprise amendments are unconstitutional, this court is satisfied beyond doubt that defendants are now and have been in full compliance with the Act since November 30, 1964. Having known the officers and directors of defendants personally and by reputation for several years, I am confident that the Resolution adopted by the corporate directors was done in complete good faith. The defendant corporations are solvent and substantial, and the individual corporate stockholders are reputable business men and civic leaders in their respective communities; thus I have no doubt that defendants shall hereafter remain in full compliance with the letter and spirit of the Act.

After a thorough study of cases from many jurisdictions, it appears that the court has several alternatives in considering the issuance of an injunction. As stated in Mitchell v. Stewart Brothers Construction Company, 184 F.Supp. 886, 901 [D.C.Neb.1960]:

"The Court has a choice of several alternatives. It might grant a 'permanent' injunction, and vacate it at some indefinite future time. Tobin v. Little Rock Packing Co., 8 Cir., 1953, 202 F.2d 234, certiorari denied 346 U.S. 832, 74 S.Ct. 26, 98 L.Ed. 355. The court might grant an injunction, subject to being reviewed within a stated period of time to see if vacation were appropriate. Mitchell v. Helena Wholesale, Inc., supra. The court might decline to grant an injunction, but retain jurisdiction of the case so that if future similar violations occurred, the court could consider the record made herein. Mitchell v. Vagabond Coach Manufacturing Company, 6 Cir., 1956, 234 F.2d 261. The final possibility, of course, would be a determination that no cause had been shown for an injunction to restrain future violation. Such has been held appropriate in the face of very grudging compliance, in the hope of inducing a better attitude on the defendant's part. Mitchell v. Bland, 5 Cir., 1957, 241 F.2d 808."

Considering all of the facts and circumstances of this case, and the further principle that injunctive relief is a drastic remedy which reasonably should be used as a preventive rather than a punitive measure, the court is constrained to deny the issuance of an injunction at this time, but retain jurisdiction of the case, in the event there should be any renewed violations on part of defendants. As stated by the court in

13. Plaintiff's Exhibit P–9.

14. Defendants' Exhibit D–3.

Mitchell v. Vagabond Coach Manufacturing Co., 234 F.2d 261, 262 [6th Cir. 1956]:

"Under the circumstances the [District] court in the exercise of its discretion concluded that no injunction should issue, 'even if the determination be that defendant was in violation.' The [District] court retained jurisdiction, noting 'In the event that in the future plaintiff deems it necessary to seek an injunction on the basis of what appear to be renewed violations by this defendant, this Court is not without power to re-open this case and to consider the entire record herein, insofar as any practice of defendant is identical or akin to that which is the subject matter of this suit.' * * *

"The [District] court did not dismiss the complaint out of hand but reserved continuing jurisdiction in the event of the resumption by the appellee of a compensation plan identical or similar to the one in question."

Plaintiff alleges that the grant of an injunction here would do no more than require defendants to obey the law which they should have been doing all the time. However, the issuance of an injunction has far more implications than merely requiring one to obey the law; and I do not believe the issuance of injunctive relief here is indicated. As was so aptly stated in the case of Mitchell v. Helena Wholesale, Inc., 163 F.Supp. 101, 105 [D.C.Ark.1958]:

"While the plaintiff insists that the injunction here does not require the defendant to do anything that it has a legal right not to do, or to refrain from exercising any legal right that it possesses, we feel that such statement is an oversimplification. It is,

of course, true that all employers subject to the Act are required to comply with its terms, still it is unrealistic to say that an enjoined employer is in the same situation as one who is not enjoined. Not only does the former labor under the stigma and embarrassment of having been found to be in violation of the law and subject to injunction, which stigma and embarrassment may have injurious effects in and of themselves, but also he is subject to contempt proceedings, conviction in which entails more serious stigma and more severe consequences than the injunction itself. And out of fear of such proceedings the enjoined employer may well feel impelled to sacrifice his own views and interests to those of the Government, if he can ever discover what they are, and pending that discovery he may well be forced, out of an abundance of caution, to resolve all questions against his own interests, as the defendant did in this case and as employers so situated generally do."

Convinced that defendants have acted in good faith, that they should not be punished upon the factual situation here, and that they will comply with the Act in the future, it is ordered that plaintiff's demand for an injunction, enjoining and restraining defendants from committing violations of the Act be, and it hereby is, denied at this time; it is further ordered that this court retain jurisdiction in this matter so that the case may be reopened upon a proper showing that defendants are in apparent violation of the Act in the future.

It is further ordered that each party pay its own costs.

Let judgment be entered accordingly